PD-0679-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 2/10/2015 5:06:38 PM
Accepted 2/11/2015 9:26:20 AM
ABEL ACOSTA
CLERK

# COURT OF CRIMINAL APPEALS

## PD-0679-14

## *Ex parte Manuel Torres*

**On Discretionary Review from No. 08-12-00244-CR
Eighth Court of Appeals, Amarillo**

**On Appeal from No. 20110D01278
34th Judicial District Court, El Paso County**

# *Amici Curiae* Brief in Support of Appellant Manuel Torres Submitted by the National Immigration Project of the National Lawyers Guild and the Texas Fair Defense Project

**Susanne Pringle
510 South Congress Ave.
Suite 208
Austin, TX 78704
Phone: 512-637-5220
Fax 512-637-5224
springle@fairdefense.org
Texas Bar No. 24083686
Counsel for Texas Fair
Defense Project**

**Sejal Zota
14 Beacon Street
Suite 602
Boston, MA 02108
Phone 617-227-9727
Fax 617-227-5495
sejal@nipnlg.org
NC Bar No. 36535
Counsel for National
Immigration Project,
National Lawyers Guild**

**Michael Mowla
445 E. FM 1382 No. 3-718
Cedar Hill, TX 75104
Phone: 972-795-2401
Fax 972-692-6636
michael@mowlalaw.com
Texas Bar No. 24048680**

## I. Identity of Parties, Counsel, and Judges

**Manuel Torres**, **Appellant.**

**Mario Ortiz Saroldi, Attorney for Appellant at trial, on appeal, and on discretionary review**, 310 North Mesa Suite 900, El Paso, Texas 79901, email msaroldi@lopezsaroldi.com.

**State of Texas, Appellee**.

**Jaime Esparza, El Paso County District Attorney, Attorney for Appellee,** 500 E. San Antonio Suite 201, El Paso, Texas 79901

**Jose J. Monsivais, El Paso County District Attorney, Attorney for Appellee,** 500 E. San Antonio Suite 201, El Paso, Texas 79901

**Douglas Tiemann, El Paso County District Attorney, Attorney for Appellee,** 500 E. San Antonio Suite 201, El Paso, Texas 79901

**Lily Stroud, El Paso County Assistant District Attorney, Attorney for Appellee,** 500 E. San Antonio Suite 201, El Paso, Texas 79901, email lstroud@epcounty.com.

**Lisa McMinn, State Prosecuting Attorney, Attorney for Appellee,** P.O. Box 13046, Austin, Texas 78711-3046, phone 512-463-1660, fax 512-463-5724, email Lisa.McMinn@spa.texas.gov.

**John Messinger, Assistant State Prosecuting Attorney, Attorney for Appellee,** P.O. Box 13046, Austin, Texas 78711-3046, phone 512-463-1660, fax 512-463-5724, email john.messinger@spa.state.tx.us.

**Susanne Pringle, Texas Fair Defense Project**, 510 South Congress Avenue Suite 208, Austin, Texas 78704, phone 512-637-5220, fax 512-637-5224, email springle@fairdefense.org.

**Sejal Zota, National Immigration Project of the National Lawyers Guild,** 14 Beacon Street Suite 602, Boston, Massachusetts 02108, phone 617-227-9727, fax 617-227-5495, email sejal@nipnlg.org.

**Michael Mowla,** 445 E. FM 1382 #3-718, Cedar Hill, Texas 75104, phone 972-795-2401, fax 972-692-6636, email michael@mowlalaw.com.

**William Moody, Presiding Judge, 34th Judicial District Court, Ellis County**, P.O. Box 284, Hillsboro, Texas 76645-0284, phone 254-582-4045, fax 254-582-4010.

**Chief Justice Ann Crawford McClure, Justice Guadalupe Rivera, and Justice Yvonne T. Rodriguez**, Eighth Court of Appeals, 500 E. San Antonio Ave Room 1203, El Paso, Texas 79901.

## II. Table of Contents

I. Identity of Parties, Counsel, and Judges..........................................................2

II. Table of Contents...................................................................................4

III. Table of Authorities.............................................................................6

IV. Appendix..............................................................................................9

V. Interest of *Amici Curiae* .......................................................................10

VI. Statement of the Case and Procedural History...............................................12

VII. Statement Regarding Oral Argument ...........................................................13

VIII. Issues Presented by *Amici Curiae* ............................................................14

IX. Facts .................................................................................................15

X. Summary of the Arguments by *Amici Curiae* ................................................16

XI. Argument .............................................................................................17

1. First Issue presented by *Amici Curiae*: The Court of Appeals correctly held that trial counsel's failure to correctly and clearly advise Appellant that his removal is virtually certain constituted deficient performance under *Padilla* and *Strickland*.....................................17

i. Introduction .......................................................................17

ii. The State misinterprets the holding of *Padilla* ...................................17

iii. The legal advice provided by trial counsel to Appellant did not comport with the standards set forth in *Padilla*......................26

iv. Ample attorney resources make it easy to provide accurate advice of the clear immigration consequences to pleading guilty or no-contest to this offense .......................................29

v. Conclusion.......................................................................35

2. Second Issue presented by *Amici Curiae*: The Court of Appeals correctly held that in viewing the totality of the circumstances, Appellant met his burden in establishing prejudice. .....................................36

i. A defendant satisfies the prejudice requirement of *Strickland* by demonstrating a reasonable probability that, without the ineffective assistance of counsel, he would not have accepted the guilty plea and that it would have been rational to reject the plea.....................................36

**ii.** A defendant does not have to demonstrate that he would have gone to trial; he just needs to demonstrate that it would have been rational to reject the plea agreement. .......................37

**iii.** It is "rational" for a defendant to reject a plea bargain because of its deportation consequences. ..............................40

**iv.** A defendant need not demonstrate that the case would have resulted in a more favorable outcome, only that he would have rejected the plea bargain in favor of other proceedings. ...................................................................................43

**v.** The Court of Appeals conducted a proper prejudice inquiry under *Padilla* ...................................................................43

XII. Conclusion and Prayer ...........................................................................44

XIII. Certificate of Service ............................................................................46

XIV. Certificate of Compliance with Tex. Rule App. Proc. 9.4 .............................46

## III. Table of Authorities

### Cases

*Aguilar v. State*, 375 S.W.3d 518 (Tex. App. Houston [14th Dist.] 2012) ..................................................................................23

*Aguilar v. State*, 393 S.W.3d 787 (Tex. Crim. App. 2013) .....................................23

*Bahtiraj v. State*, 840 N.W.2d 605 (N.D. 2013) ...................................................25

*Carachuri-Rosendo v. Holder,* 560 U.S. 563 (2010)..................................................11

*Chaidez v. United States*, 133 S.Ct. 1103 (2013) ................................................ 40, 41

*Commonwealth v. Clarke*, 949 N.E.2d 892 (Mass. 2011) ......................................41

*Commonwealth v. DeJesus*, 9 N.E.3d 789 (Mass. 2014)............................ 22, 25, 28

*Denisyuk v. State*, 30 A.3d 914 (Md. 2011).............................................................42

*Encarnacion v. State*, 763 S.E.2d 463 (Ga. 2014) ................................................ 20, 25

*Ex parte Argent*, 393 S.W.3d 781 (Tex. Crim. App. 2013).......................................39

*Ex parte Cisneros*, No. 08-11-00180-CR, 2013 WL 1281995 (Tex. App. El Paso, Mar. 28, 2013) (unpublished opinion)..................................42

*Ex Parte Leal*, 427 S.W.3d 455 (Tex. App. San Antonio 2014) ...................... passim

*Ex parte Martinez*, 13-10-00390-CR, 2013 WL 2949546 (Tex. App. Corpus Christi, June 13, 2013, *no pet.*) (mem. op., not designated for publication) ................................................................23

*Ex parte Olvera*, 394 S.W.3d 572 (Tex. App. Dallas 2012, *pet. granted*), *rev'd on retroactivity grounds*, PD-1215-12, 2013 WL 1149926 (Tex. Crim. App. Mar. 20, 2013) (not designated for publication) ................................................................24

*Ex parte Ramirez*, 08-11-00073-CR, 2012 WL 3113140 (Tex. App. El Paso, Aug. 1, 2012, *no pet.*) (not designated for publication)......................23

*Ex parte Romero*, 351 S.W.3d 127 (Tex. App. San Antonio 2011, *pet. granted*), *rev'd on retroactivity grounds*, 393 S.W.3d 788 (Tex. Crim. App. 2013).............................................................24

*Ex parte Tanklevskaya*, 361 S.W.3d 86 (Tex. App. Houston [1st Dist.] 2011, pet. granted), *rev'd on retroactivity grounds*, 393 S.W.3d 787 (Tex. Crim. App. 2013) .......................................................23

*Ex parte Torres*, No. 08-12-00244-CR, 2014 Tex. App. LEXIS 3168, 2014 WL 1168929 (Tex. App. El Paso, March 21, 2014, *pet. granted*) (memorandum opinion) ................................................. 12, 17, 20, 44

*Hernandez v. State*, 124 So.3d 757 (Fla. 2012) ....................................................24

*Hill v. Lockhart,* 474 U.S. 52 (1985) ............................................................... 36, 37

*INS v. St. Cyr,* 533 U.S. 289 (2001) .....................................................................11

*Johnson v. State*, 169 S.W.3d 223 (2005)............................................................43

*Kovacs v. United States*, 744 F.3d 44 (2d Cir. 2014) ..........................................37

*Lafler v. Cooper*, 132 S.Ct. 1376 (2012) ............................................................38

*Martinez v. State*, PD-1338-11, 2012 WL 1868492 (Tex. Crim. App. May 16, 2012) (not designated for publication)............................................23

*Matter of Salazar-Regino,* 23 I&N Dec. 223 (BIA 2002) ....................................27

*Missouri v. Frye*, 132 S.Ct. 1399 (2012) ........................................................ 37, 38

*Moosa v. INS,* 171 F.3d 994 (5th Cir. 1999)........................................................27

*Padilla v. Kentucky*, 559 U.S. 356 (2010) ........................................................ passim

*Roe v. Flore-Ortega*, 528 U.S. 470 (2000) ................................................ 36, 40, 41

*Salazar v. State*, 361 S.W.3d 99 (Tex. App. Eastland 2011, *no pet.*)... 24, 40, 41, 43

*State v. Campos-Corona*, __ P.3d __, 2013 COA 23 (Colo. App. Feb. 28, 2013) ................................................................................................25

*State v. Guzman-Ruiz*, 6 N.E.3d 806 (Ill. App. 3d  2014) ....................................25

*State v. Kostyuchchenko*, 8 N.E.3d 353 (Ohio App. 2014) ..................................26

*State v. Martinez*, 253 P.3d 445 (Wash. App. 2011) ...........................................26

*State v. Sandoval*, 249 P.3d 1015 (Wash. 2011)............................................. 40, 42

*Strickland v. Washington*, 466 U.S. 668 (1984) ................................. 30, 36, 37, 41

*United States v. Bonilla*, 637 F.3d 980 (9th Cir. 2011) .......................................24

*United States v. Choi*, 581 F. Supp. 2d 1162 (N.D. Fla. 2008) ...........................22

*United States v. Mendoza-Lopez,* 481 U.S. 828 (1987).......................................11

*United States v. Orocio*, 645 F.3d 630 (3d Cir. 2011)..................................... 40, 41

**Statutes**

8 U.S.C. § 101 (2015) ..........................................................................................26

8 U.S.C. § 1101 (2015) ..................................................................26

8 U.S.C. § 1182 (2015) ..................................................................24

8 U.S.C. § 1227 (2015) .................................................... 19, 24, 26

**Other Authorities**

2003. L. Coyle, B. Hines & L. Teran, *Basics of Immigration Law for Texas Criminal Defense Attorneys,* Texas Criminal Defense Lawyers Association (2003) ...................................................33

Amer. Bar Ass'n., *ABA Standards for Criminal Justice, Pleas of Guilty* Standard 14 (3d ed. 1999)..................................................31

*Amici Curiae* Brief for the Nat'l Ass'n. of Criminal Defense Lawyers, et. al...................................................................................32

B. Bates, *Good Ideas Gone Bad: Plea Bargains & Resident Aliens,* 66 Tex. Bar J. 878, 882 (Nov. 2003) ............................................33

H.R. Conf. Rep. No. 104-828 (1996) ("Joint Explanatory Statement")..................27

M. Castillo, *Immigration Consequences: A Primer for Texas Criminal Defense Attorneys in Light of Padilla v. Kentucky*, 63 Baylor L. Rev. 587 (2011) ...........................................................................33

Nat'l Legal Aid and Defender Ass'n, *Performance Guidelines for Criminal Representation* § 6.2 (1995)...........................................31

State Bar of Texas, *Performance Guidelines for Noncapital Criminal Defense Representation* 6.2 (2011) .............................................31

**Rules**

Tex. Rule App. Proc. 68.11 (2015)..................................................46

Tex. Rule App. Proc. 68.4 (2015).....................................................13

Tex. Rule App. Proc. 9.4 (2015).......................................................46

## IV. Appendix

**Appendix A:** Cover page to L. Coyle, B. Hines & L. Teran, *Basics of Immigration Law for Texas Criminal Defense Attorneys,* Texas Criminal Defense Lawyers Association (2003)

**Appendix B:** Cover pages of various presentations on immigration consequences of criminal cases presented by the National Immigration Project.

**Appendix C:** Cover pages for various continuing legal education presentations on the immigration consequences of criminal cases.

**Appendix D:** *Opinion* and Judgment in *Ex parte Torres*, No. 08-12-00244-CR, 2014 Tex. App. LEXIS 3168, 2014 WL 1168929 (Tex. App. El Paso, March 21, 2014, *pet. granted*) (memorandum opinion)

## V.  Interest of *Amici Curiae*

The Texas Fair Defense Project ("TFDP") is a not-for-profit organization located in Austin, Texas.  Its mission is to improve the fairness of criminal courts in Texas and to ensure that all Texans have access to justice.  TFDP focuses on the protection of the Sixth Amendment in Texas state courts and issues related to local practices and procedures affecting indigent defendants, including indigent defendants who are not citizens of the United States. TFDP was also closely involved in the development and drafting of Performance Guidelines for Non-Capital Defense Representation that were adopted by the State Bar of Texas Board of Directors in 2011 referenced in this brief.

Susanne Pringle is the staff attorney for TFDP.  Susanne Pringle and TFDP have not been paid any fee for preparing this *Amici Curiae* Brief.

The National Immigration Project of the National Lawyers Guild ("National Immigration Project") is a national not-for-profit membership organization of immigration attorneys, legal workers, grassroots advocates, and others working to secure a fair administration of the immigration and nationality laws. It has members in almost all 50 states, including Texas. As an organization with leading expertise in the intersection of criminal and immigration law, the National Immigration Project since 1984 has provided legal training to the criminal defense bar on the immigration consequences of criminal conduct in 43 states, the District

of Columbia, Puerto Rico, and U.S. Virgin Islands, including Texas. The length of these training sessions ranges from one hour to several days. The format for these training sessions includes workshops, seminars, webinars and podcasts. It has authored the treatise *Immigration Law and Crimes,* which was first published in 1984 and cited by Justice Alito in *Padilla v. Kentucky,* 559 U.S. 356 (2010). In addition, the U.S. Supreme Court has accepted *amici curiae* briefs submitted by the National Immigration Project in several important cases involving the application of criminal and immigration law. *See, e.g., Carachuri-Rosendo v. Holder,* 560 U.S. 563 (2010); *Padilla*; *INS v. St. Cyr,* 533 U.S. 289 (2001); and *United States v. Mendoza-Lopez,* 481 U.S. 828 (1987).

Sejal Zota is the legal director of the National Immigration Project. Sejal Zota and National Immigration Project have not been paid any fee for preparing this *Amici Curiae* Brief.

Michael Mowla is a private Dallas County attorney who practices regularly before the appellate courts of Texas. Michael Mowla has not been paid any fee for preparing this *Amici Curiae* Brief.

**To The Honorable Judges of the Court of Criminal Appeals:**

*Amici Curiae* submit this Brief in support of Appellant Manuel Torres:

**VI. Statement of the Case and Procedural History**

This case arises out of the *Opinion* and judgment of the Eighth Court of Appeals in *Ex parte Torres*, No. 08-12-00244-CR, 2014 Tex. App. LEXIS 3168, 2014 WL 1168929 (Tex. App. El Paso, March 21, 2014, *pet. granted*) (memorandum opinion) (*See* Appendix D). The Court of Appeals reversed the trial court's denial of Appellant's application for writ of habeas corpus application seeking reversal of his guilty plea to one count of felony possession of a controlled substance and one count of robbery. *Torres, Id*. at \*20-21; *see* RR, 36.[1]

The State filed a petition for discretionary review, which was granted on September 17, 2014. On October 17, 2014, the State filed its brief. On December 23, 2014, Appellant filed his brief. *Amici Curiae* now submit this brief.

---

[1] The Clerk's Record is referenced throughout this Brief as "CR" followed by the page number of the Clerk's Record. The Reporter's Record is referenced as "RR" and page number.

## VII. Statement Regarding Oral Argument

In this Court's September 17, 2014 notice in which it granted the State's petition for discretionary review, the Court announced that oral argument will not be permitted. *See* Tex. Rule App. Proc. 68.4(c) (2015).

**VIII. Issues Presented by *Amici Curiae***

**First Issue presented by *Amici Curiae*:** The Court of Appeals correctly held that trial counsel's failure to correctly and clearly advise Appellant that his removal is virtually certain constituted deficient performance under *Padilla* and *Strickland*.

**Second Issue presented by *Amici Curiae*:** The Court of Appeals correctly held that in viewing the totality of the circumstances, Appellant met his burden in establishing prejudice.

## IX. Facts

*Amici Curiae* adopt the findings of fact by the Court of Appeals. *See Torres*, *Id*. at *2-9.

## X. Summary of the Arguments by *Amici Curiae*

*Amici Curiae* present two issues in this Brief. First, *Amici Curiae* will argue that the Court of Appeals correctly held that trial counsel's failure to correctly and clearly advise Appellant that his removal is virtually certain constituted deficient performance under *Padilla* and *Strickland*. Second, *Amici Curiae* will argue that the Court of Appeals correctly held that in viewing the totality of the circumstances, Appellant met his burden in establishing prejudice. As a result, *Amici Curiae* will argue that this Court should affirm the Opinion and judgment of the Eighth Court of Appeals.

## XI. Argument

1. <u>**First Issue presented by *Amici Curiae***</u>**: The Court of Appeals correctly held that trial counsel's failure to correctly and clearly advise Appellant that his removal is virtually certain constituted deficient performance under *Padilla* and *Strickland*.**

### i. Introduction

*Padilla* holds that defense counsel must accurately advise noncitizen defendants like Appellant that deportation is "presumptively mandatory" when a proposed plea clearly falls within a removal ground. *See Padilla*, 559 U.S. at 368-369 . To meet the standard of constitutional effectiveness, Appellant's trial counsel was obligated to advise him unequivocally that his plea would subject him to presumptively mandatory deportation. As the following arguments in this first issue will show, the Court of Appeals correctly held that trial counsel's failure to provide such advice and admitted failure to research the immigration consequences of the proposed plea constituted ineffective assistance of counsel. *Torres*, *Id*. at \*5. In issue two below, undersigned counsel will then discuss why the Court of Appeals correctly held that in viewing the totality of the circumstances, Appellant met his burden in establishing prejudice.

### ii. The State misinterprets the holding of *Padilla*

The State argues that even where the removal consequences are clear, defense counsel need only advise her client that the guilty plea "carries a risk of adverse immigration consequences" and no more. State Br. at 42-43. The State

argues that with that advice defense counsel has satisfied his or her Sixth Amendment obligation under *Padilla*. *Id.*

The State misinterprets the Supreme Court's holding in *Padilla*. In *Padilla*, the Supreme Court held that the scope of trial counsel's duty hinges on the **clarity** of the immigration consequence. 559 U.S. at 369 (emphasis added). If a plea "clear[ly]" falls within a ground of removal, counsel must advise the client that "deportation [is] **presumptively mandatory**." *Id.* (emphasis added); *see also id*. at 368 (defense counsel must advise a client when the immigration statute "specifically commands removal"). In contrast, when the risk of deportation is not clear, counsel need only advise the defendant "that pending criminal charges *may* carry a risk of adverse immigration consequences." *Id*. at 369 (emphasis added). Applying these rules to Padilla's claim, the Court found that "the terms of the [controlled substance removal ground] are succinct, clear, and explicit in defining the removal consequence of Padilla's conviction." *Id*. at 368. Because the immigration consequences "could easily be determined from reading the removal statute," "constitutionally competent counsel would have advised him that his conviction for drug distribution made him subject to automatic deportation." *Id*. at 369.

In other words, when the removal consequence is clear—as when a noncitizen pleads guilty to an offense that unambiguously qualifies as a controlled

substance offense—a defense attorney cannot simply tell a client there is a "risk" of removal or that he or she "may" be removed; more specific and unequivocal advice is required. And, the law is that a noncitizen commits an offense for which deportation is **presumptively mandatory** if he is convicted of an "aggravated felony offense." *See* 8 U.S.C. § 1227(a)(2)(A)(iii) (2015). And while the Court did not specify the exact words an attorney must use when the removal consequence is clear, the Court noted that the removal of someone in Padilla's situation was "virtually mandatory," "automatic," "virtually inevitable," "practically inevitable," "presumptively mandatory," and "nearly an automatic result[.]" *See id.* at 359, 360, 364, 366, 369.

Yet, the State attempts to limit *Padilla* by seizing on the Court's occasional use of the word "risk." *See* State Br. at 42-43. But just because the Court said defense counsel must warn a client about the "risk" of removal does not mean defense counsel must literally tell a client that they "risk" removal without saying anything else. Rather, as the rest of *Padilla* makes clear, in cases in which the removal consequence is clear, defense counsel must inform the noncitizen that the risk is *particularly great*—that is, the risk is such that removal is virtually certain. In other words, a defense attorney must always tell a noncitizen client that there is a risk of removal, and exactly how much risk the attorney must tell the client he or she faces depends on the circumstances of the individual's case.

Further, as the Court of Appeals found, trial counsel's constitutional duty to inform his client that his removal is a virtual legal certainty does not wane merely because counsel believes the probability of actual removal is uncertain based on his past experience and the government's enforcement priorities. *Torres*, *Id.* at \*5 (citing *Padilla,* 559 U.S. at 359); *see also Encarnacion v. State*, 763 S.E.2d 463, 465-466 (Ga. 2014) ("We recognize that, except for death and taxes, one hundred percent certainty does not exist in this world and one can always imagine exceptional circumstances in which, despite the clear mandate of 8 U.S.C. § 1227(a), some noncitizens convicted of an aggravated felony might avoid removal. However, as we understand federal immigration law, those circumstances are exceptionally rare. An attorney's advice as to the likelihood of deportation must be based on realistic probabilities, not fanciful possibilities.").

In ruling that defense counsel must properly calibrate their advice to accurately communicate the severity of the immigration consequences attendant to a plea, the Supreme Court sought to ensure that noncitizen defendants like Padilla and Appellant are unequivocally informed when deportation is a virtual certainty. There is no other way to read the majority opinion, as confirmed by Justice Alito's concurrence. Justice Alito supported a rule in which defense attorneys needed to do no more than "advise the defendant that a criminal conviction may have adverse immigration consequences[.]"*Padilla*, 559 U.S. at 375 (Alito, J. concurring). But,

as Justice Alito himself conceded, the majority unequivocally *rejected* his reasoning: "the Court's opinion would not just require defense counsel to warn the client of a general *risk* of removal; it would also require counsel, in at least some cases, to specify what the removal *consequences* of a conviction would be." *Id.* at 377 (emphasis in original). The state's reading—that the burden imposed on counsel is limited to informing a client of the risk of deportation—almost perfectly echoes the rule supported by Justice Alito's concurring opinion, but *rejected* by the majority. If any doubt existed that the State's reading of *Padilla* is wrong, reviewing the back-and-forth between the *Padilla* majority and Justice Alito's concurring opinion should put those doubts to rest.

In rejecting Justice Alito's position that every case requires only a warning of possible deportation, the majority recognized that a warning of possible deportation is categorically different from a warning of virtually certain deportation. The stark difference between the two is aptly illustrated by Honorable Robert L. Hinkle, addressing the government's argument that a defendant pleading to an aggravated felony need only know that deportation was a possibility: "Well, I know every time that I get on an airplane that it could crash, but if you tell me it's going to crash, I'm not getting on." *United States v. Choi*, 581 F. Supp. 2d 1162 (N.D. Fla. 2008), Transcript of Motion Hearing (Sept. 24, 2008).

A warning of "possible deportation" carries far less influence on a

defendant's calculus about whether to accept a plea than a "virtually certain" warning. The former communicates that a defendant has the opportunity to defend against deportation. A defendant receiving this advice might well take her chances in immigration court in exchange for a reduced criminal charge or sentence. Where an offense falls into a ground of removal, however, this warning fails to convey the almost certain likelihood of removal.

A defendant receiving the "virtually certain" warning, however, will correctly understand that the only meaningful way to prevent deportation is to negotiate an immigration-safe plea in criminal proceedings. Such advice accurately reflects the severe and virtually certain consequences of her guilty plea. For example, there is a significant difference "in a lawyer's advice to a client that the client 'faces' five years of incarceration on a charge, as compared to advice that the conviction will result in a five-year mandatory minimum prison sentence." *Commonwealth v. DeJesus*, 9 N.E.3d 789, 796 n.7 (Mass. 2014). Put another way, an attorney advising a client that she "might" be deported is like saying she "might" get life in prison, or she might get no sentence at all.

Texas courts of appeals have reiterated and applied *Padilla's* holding that counsel must unequivocally inform a defendant when deportation is a "virtual certainty." *See Aguilar v. State*, 375 S.W.3d 518, 524 (Tex. App. Houston [14th Dist.] 2012) (Under *Padilla*, a criminal defendant who faces almost certain

deportation is entitled to know more than that it is possible that a guilty plea could lead to removal; he is entitled to know that it is a virtual certainty), *rev'd on retroactivity grounds, Aguilar v. State*, 393 S.W.3d 787, 788 (Tex. Crim. App. 2013); *see, e.g., Ex parte Leal,* 427 S.W.3d 455, 461-462 (Tex. App. San Antonio 2014) (holding that counsel could have readily determined that appellant's second plea to a controlled substance would result in deportation and therefore should have provided accurate, specific advice, not a general warning of some adverse immigration consequence); *Ex parte Ramirez,* 08-11-00073-CR, 2012 WL 3113140, at *3-4 (Tex. App. El Paso, Aug. 1, 2012, *no pet.*) (not designated for publication); *Martinez v. State*, PD-1338-11, 2012 WL 1868492, at *4 (Tex. Crim. App. May 16, 2012) (not designated for publication), *overruling on retroactivity grounds recognized on remand sub nom Ex parte Martinez,* 13-10-00390-CR, 2013 WL 2949546, at *2 (Tex. App. Corpus Christi, June 13, 2013, *no pet.*) (mem. op., not designated for publication); *Ex parte Tanklevskaya*, 361 S.W.3d 86, 96-97 (Tex. App. Houston [1st Dist.] 2011, pet. granted), *rev'd on retroactivity grounds*, 393 S.W.3d 787 (Tex. Crim. App. 2013) (recognizing duty to explicitly state that client will be deemed inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(II) (2015) for pleading guilty to "violation of . . . any law...relating to a controlled substance..." because immigration consequences were clear and presumptively mandatory); *Ex parte Olvera*, 394 S.W.3d 572, 576 (Tex. App. Dallas 2012, *pet. granted*), *rev'd on*

*retroactivity grounds*, PD-1215-12, 2013 WL 1149926 (Tex. Crim. App. Mar. 20, 2013) (not designated for publication) (counsel has duty to inform client that pleading guilty to aggravated felony will result "in automatic deportation or exclusion from the country" under 8 U.S.C. § 1227(a)(2)(A)(iii)(2015)); *Ex parte Romero*, 351 S.W.3d 127, 131 (Tex. App. San Antonio 2011, pet. granted), *rev'd on retroactivity grounds*, 393 S.W.3d 788 (Tex. Crim. App. 2013); *Salazar v. State*, 361 S.W.3d 99, 103 (Tex. App. Eastland 2011, *no pet.*) (use of terms "likelihood" and "possibility" of removal when conviction would result in "certain deportation" rendered counsel's advice ineffective).

A multitude of state and federal appellate courts agree. *See, e.g., United States v. Bonilla*, 637 F.3d 980, 984 (9th Cir. 2011) (holding that a "defendant who faces almost certain deportation is entitled to know more than that it is *possible* that a guilty plea could lead to removal; he is entitled to know that it is a virtual certainty") (emphasis in original); *Hernandez v. State*, 124 So.3d 757, 762 (Fla. 2012) (where "defense counsel merely advised Hernandez that a plea [to a controlled substance offense] could/may affect [Hernandez's] immigration status," he "was deficient under *Padilla* for failing to advise Hernandez that his plea subjected him to presumptively mandatory deportation"); *Encarnacion v. State*, 763 S.E.2d 463, 465-466 (Ga. 2014) (because "a conviction for an aggravated felony automatically triggers the removal consequence and almost always leads to

deportation," counsel "has a duty to accurately advise his client of that fact."); *DeJesus*, 9 N.E.3d at 793-794 (holding that defense counsel did not satisfy obligation under *Padilla* to accurately inform defendant that the legal consequence of pleading guilty to an aggravated felony would be "presumptively mandatory deportation" where counsel only advised the defendant that he would be "eligible for deportation"); *Bahtiraj v. State*, 840 N.W.2d 605, 610 (N.D. 2013) (where client's conviction for an aggravated felony resulted in "presumptively mandatory deportation," counsel's advice that deportation was possible constituted deficient performance); *State v. Campos-Corona*, __ P.3d __, 2013 COA 23, at *3 (Colo. App. Feb. 28, 2013) (holding that where removal is mandatory, "plea counsel did not perform reasonably by merely advising Campos–Corona that a plea may carry an adverse immigration risk and thus did not provide adequate assistance"); *State v. Guzman-Ruiz*, 6 N.E.3d 806, 810 (Ill. App. 3d 2014) (holding defense counsel's "representation fell below an objective standard of reasonableness" when he failed to inform defendant that, if she accepted the plea agreement, her deportation for a controlled substance conviction would be "presumptively mandatory"); *State v. Kostyuchchenko*, 8 N.E.3d 353, 357 (Ohio App. 2014) ("trial counsel, in negotiating Kostyuchenko's guilty plea, had a duty under *Padilla* to ascertain from the immigration statutes, and to accurately advise him, that his conviction mandated his deportation"; general advice regarding possible deportation was

insufficient); *State v. Martinez*, 253 P.3d 445, 448 (Wash. App. 2011) (finding counsel's performance deficient where he "solely discussed the possibility of deportation" and "did not warn defendant that his deportability for an aggravated felony drug trafficking conviction was "certain").

### iii. The legal advice provided by trial counsel to Appellant did not comport with the standards set forth in *Padilla*

The advice in Appellant's case fell far short of the standards set forth in *Padilla*. Appellant—a lawful permanent resident—pleaded guilty to felony possession of a cocaine and robbery. (RR, 5). The Immigration and Nationality Act (INA) provides that a conviction for possession of cocaine is a deportable offense under immigration law. *See* 8 U.S.C. § 1227(a)(2)(B)(i) (2015) (state law conviction "relating to a controlled substance . . . other than a single offense involving possession for one's own use of 30 grams or less of marijuana" is a deportable offense); *see also* 8 U.S.C. § 101(a)(43) (2015).

In addition, for immigration consequences, deferred adjudication community supervision is the same as a conviction. *See* 8 U.S.C. § 1101(a)(48)(A) (2015) ("The term "conviction" means...a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and the judge has ordered

some form of punishment, penalty, or restraint on the alien's liberty to be imposed."). Both the Board of Immigration Appeals and the federal appellate courts have consistently held that any admission of guilt, whether a judgment of deferred adjudication community supervision or regular community supervision, amounts to a "conviction" for immigration purposes. *See Matter of Salazar-Regino,* 23 I&N Dec. 223 (BIA 2002); *Moosa v. INS,* 171 F.3d 994, 1005-1006 (5th Cir. 1999); H.R. Conf. Rep. No. 104-828 at 224 (1996) ("Joint Explanatory Statement") (clarifying "Congressional intent that even in cases where adjudication is 'deferred,' the original finding or confession of guilt is sufficient to establish a 'conviction' for purposes of the immigration laws").

Thus, there should have been no confusion that Appellant was pleading guilty to an offense that Congress classifies as a deportable controlled substance offense. In fact, the Supreme Court in *Padilla* expressly found that the terms of the very statute at issue here are "succinct, clear, and explicit" in defining the removal consequence of a drug conviction. *Padilla*, 559 U.S. at 368. Given that, this was *not* a case where the "criminal defense attorney need[ed to] do no more than advise" the client that the plea carries "a risk of adverse immigration consequences." *Id*. at 369.

Instead, trial counsel Kenrick's "clear" duty was to tell Appellant that accepting the Government's plea agreement would make his "removal virtually

certain," that Appellant was pleading guilty to an offense that makes Appellant "presumably deportable," or words to this effect. *See Padilla*, 559 U.S. at 369; *DeJesus*, 9 N.E.3d at 795-796. However, trial counsel failed to meet this duty because he never provided such advice. Notably absent from Kenrick's response about the advice he had given Appellant is a statement that his removal was virtually certain or that Appellant was pleading to an offense that is presumably deportable. Kenrick testified that he believed that the two felonies Torres was facing were aggravated felonies but *did not* inform Appellant of the very important fact that he would be removable if he pled to these charges (RR, 25-27).

Rather, according to trial counsel, before Torres pled guilty, he spent "[p]robably less than a minute" explaining the immigration consequences section of the plea papers, and told him no more than he "could" be deported and "advised him to consult an immigration lawyer." (RR, 23-27). Both of those were insufficient where Appellant was clearly deportable for a controlled substance offense. *See Padilla*, 559 U.S. at 369. Moreover, in open court, trial counsel also did not warn Appellant on the record about the clear immigration consequences of his plea; nor was there any discussion of the immigration consequences on the record by the trial court. (RR, 23-24).

Due to trial counsel's failure to properly advise Appellant, Appellant pleaded guilty, incorrectly believing that he would still have the opportunity to

remain in the country he had lived in with his entire family since the age of two or three. The reality of accepting the plea, however, meant that Appellant had been convicted of a deportable controlled substance offense and thereby subject to virtually certain removal and mandatory detention. Because his attorney's advice did not accurately convey the true risk of removal, the Court of Appeals correctly found that counsel's performance was deficient.

### iv. Ample attorney resources make it easy to provide accurate advice of the clear immigration consequences to pleading guilty or no-contest to this offense

*Amici* National Immigration Project and Texas Fair Defense Project, as well as the National Immigration Project's members, comprised both of criminal justice and immigrant advocacy organizations providing resources to the criminal defense bar, advance and promote the standards of effective attorney performance embodied in *Padilla*. *Amici* train criminal defense counsel to comply with the duties set forth in *Padilla*, which include researching potential immigration consequences and accurately advising noncitizens where the removal consequences are presumptively mandatory. A defense attorney who fails to investigate and negotiates a plea resulting in clear removal consequences has not fulfilled his attorney's duty to the bar, to the Constitution, or, most importantly, to his client. As the Court of Appeals found, *competent* defense counsel would have

advised Appellant that pleading guilty to possession of cocaine *would* result in presumptively mandatory deportation.

Before a defense attorney can reasonably determine the removal consequences of a potential plea, he must engage in some preliminary investigation and research. *See Strickland v. Washington*, 466 U.S. 668, 690-691 (1984) ("counsel has a duty to make reasonable investigations"). The duty to investigate and research the immigration consequences also applies when "the law is not succinct and straightforward." *Padilla*, 559 U.S. at 367, 369. Before a defense attorney can reasonably determine that the immigration consequences are too complex to warrant specific advice, preliminary investigation and research must be done. *See Strickland*, 466 U.S. at 690-691. Whether the relevant immigration law is simple, as in this case, or more complicated, attorneys cannot simply eschew their duty to research and give generic warnings about immigration consequences.

The professional standards relied on by the Supreme Court in *Padilla* make clear that determining the consequences of a particular plea requires investigation and analysis of the client's immigration status and criminal history, the specific criminal statute, and the client's plea statement. 559 U.S. at 367; *see, e.g.*, Nat'l Legal Aid and Defender Ass'n, *Performance Guidelines for Criminal Representation* § 6.2 (1995) ("In order to develop an overall negotiation plan, counsel should be fully aware of, and make sure the client is fully aware of . . .

other consequences of conviction such as deportation. . . . In developing a negotiation strategy, counsel should be completely familiar with . . . the advantages and disadvantages of each available plea according to the circumstances of the case.");[2] Amer. Bar Ass'n., *ABA Standards for Criminal Justice, Pleas of Guilty* Standard 14-3.2(f), (3d ed. 1999) ("counsel should be familiar with the basic immigration consequences that flow from different types of guilty pleas, and should keep this in mind in investigating law and fact and advising the client").[3] *see also* State Bar of Texas, *Performance Guidelines for Noncapital Criminal Defense Representation* 6.2(B)(13) (2011) ("In order to develop an overall negotiation plan, counsel should be fully aware of, and make the client fully aware of . . .[d]eportation and other possible immigration consequences that may result from the plea").[4]

Although not all criminal defense attorneys have complied with their obligations in this area – as demonstrated by Appellant's case, a considerable array of resources has long existed to help defense counsel fulfill these professional obligations. These resources include a wide range of written treatises, online

---

[2]     The National Legal Aid and Defender Association Guidelines are available at www.nlada.org/Defender/ Defender_Standards/Performance_Guidelines.

[3]     The ABA criminal justice standards are available at www.americanbar.org/content/dam/aba/publications/criminal_justice_standards/pleas_guilty.authcheckdam.pdf.

[4] The Texas Bar Performance Guidelines are available at www.texasbar.com/Content/NavigationMenu/ForLawyers/Committees/PerformanceGuidelinesforNon-CapitalCriminalDefenseRepresentationJanuary2011.pdf.

practice manuals, convenient reference guides, and state-specific guides that work through the laws of many jurisdictions and explain the immigration implications of each one. *See Amici Curiae* Brief for the Nat'l Ass'n. of Criminal Defense Lawyers, et. al. at 32, *Padilla*, *Id*. (No. 08-651) (identifying almost 1,000 different publications and hundreds of training sessions for defenders throughout the nation on the immigration consequences of criminal convictions). Many of these publications are available online and free of charge to defense attorneys. Moreover, criminal and immigration law organizations have engaged in extensive nationwide efforts to train defense attorneys in immigration issues and to establish and maintain nationwide, statewide and regional hotlines through which defense attorneys can obtain case-specific advice. *Id*. at *25-32.

In particular, defense counsel in Texas have long had access to detailed resource materials and trainings that explain the specific immigration consequences of convictions of Texas offenses. For example, this Court funded a detailed and widely-used manual on this topic that was published in 2003. L. Coyle, B. Hines & L. Teran, *Basics of Immigration Law for Texas Criminal Defense Attorneys,* Texas Criminal Defense Lawyers Association (2003) ("defense counsel should ensure that a non-citizen defendant is given complete and accurate information regarding the immigration consequences of a decision in a criminal

case").[5] The State Bar of Texas also published a primer on this topic in 2003. *See* B. Bates, *Good Ideas Gone Bad: Plea Bargains & Resident Aliens,* 66 Tex. Bar J. 878, 882 (Nov. 2003) ("Since deportation is usually the *most significant consequence* of the conviction, it requires more, and not less, consideration than potential jail time or the amount of a fine.") (emphasis in original).

Also, in 2003, attorney Jodilyn Goodwin developed and made readily available to defense counsel a reference chart assessing the immigration consequences of selected Texas offenses. It has been updated annually. Most recently, Mario Castillo updated and revamped it as part of a law journal article. *See* M. Castillo, *Immigration Consequences: A Primer for Texas Criminal Defense Attorneys in Light of Padilla v. Kentucky*, 63 Baylor L. Rev. 587 (2011).

In addition, over the last two decades, there have been numerous trainings for the Texas defense bar on the immigration consequences of criminal convictions.[6] The State Bar of Texas has conducted trainings on the immigration

---

[5] *See* Appendix A for cover page from materials. The Court may take judicial notice of these materials and trainings which are "not subject to reasonable dispute [and]. . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Tex. Rule Evid. 201(b) (2015). *See*, *e.g.*, *Estrada v. State*, 313 S.W.3d 274, 287 (2010) (taking judicial notice on appeal of undisputed prison policy). The manual is on file with counsel for amici and available to the court and parties upon request.

[6] For example, *amicus* National Immigration Project helped conduct trainings concerning the immigration consequences of crime in June 1990 in Austin; on February 8, 1991 in El Paso; on February 11, 1994 and November 15, 1996 in San Antonio. *See* Appendix B for excerpts and cover pages from materials. Additional materials are on file with counsel for amici and available to the court and parties upon request. The Defending Immigrants Project of which National Immigration Project is a member, hosted a training on the Immigration Consequences of Convictions & Sentences in San Antonio on Sept. 24, 2004.

consequences of convictions for defense counsel annually since 1999,[7] and so has American Gateways for the last twelve years. Similarly, the University of Texas at Austin School of Law every year since 2003 has hosted a multi-day Conference on Immigration Law that features at least one CLE on the immigration consequences of criminal convictions.[8]

As noted in *Padilla*, the determination of whether a crime is a deportable one can often be made with a straightforward review of the immigration statute. 559 U.S. at 368-369. This was undeniably the case regarding Appellant. *Ex parte Torres*, at \*5 ("a cursory check of the Immigration and Nationality Act shows" that possession of cocaine is an "automatically deportable" offense under immigration law). However, trial counsel here failed to take even the basic step of reading the immigration statute. (RR, 25-26) (admitting that he had *never* independently reviewed the Immigration and Nationality Act). Trial counsel also neglected to take advantage of the myriad national and state treatises and practice materials available to him, any of which make plain that possession of cocaine is a deportable offense. In fact, even a simple Google search would have yielded the information necessary to analyze Appellant's case.[9]

---

[7] *See* Appendix C for excerpts and cover pages from materials. Additional materials are on file with counsel for *amici* and available to the court and parties upon request.

[8] Detailed materials for 2003 – 2014 University of Texas immigration CLEs are available here, https://utcle.org/materials/index/practice_area_id/20.

[9] The search "immigration consequence of possession of cocaine" produces a resource titled "Immigration Consequences of Drug Offenses: Overview and Strategies" presented by expert

### v. Conclusion

As a result, the Court of Appeals correctly held that trial counsel's failure to correctly and clearly advise Appellant that his removal is virtually certain constituted deficient performance under *Padilla* and *Strickland*. In the next section, undersigned counsel will discuss why the Court of Appeals correctly held that in viewing the totality of the circumstances, Appellant met his burden in establishing prejudice.

---

organizations National Association of Criminal Defense Lawyers and the Defending Immigrants Partnership (of which *amicus* National Immigration Project is a partner). This guide quickly makes plain that a conviction for possession of a federally controlled substance is a deportable offense. *See* https://www.nacdl.org/uploadedFiles/Content/Legal_Education/Live_CLE/Live_CLE/02_Immigration_Consequences_Drug_Offenses.pdf (last accessed on January 6, 2015).

**2. Second Issue presented by *Amici Curiae*: The Court of Appeals correctly held that in viewing the totality of the circumstances, Appellant met his burden in establishing prejudice.**

        **i. A defendant satisfies the prejudice requirement of *Strickland* by demonstrating a reasonable probability that, without the ineffective assistance of counsel, he would not have accepted the guilty plea and that it would have been rational to reject the plea.**

Under *Strickland*, a defendant proves prejudice by demonstrating that without the attorney's error, the outcome of the proceeding at issue would have been different. 466 U.S. at 695. To demonstrate that the actions of counsel prejudiced a defendant when he entered a guilty plea, the defendant must show that it would have been rational under the circumstances to reject that plea in the absence of counsel's error. *Padilla*, 559 U.S. at 372; *Roe v. Flore-Ortega*, 528 U.S. 470, 480, 486 (2000). A defendant can establish the rational nature of the decision to reject the plea agreement by establishing a "reasonable probability" that "but for counsel's errors" she would have either "insisted on going to trial," *Hill v. Lockhart,* 474 U.S. 52, 59 (1985) because of her desire to avoid deportation, or that she would have continued to negotiate for an alternative plea that mitigated the deportation consequence. *Missouri v. Frye*, 132 S.Ct. 1399, 1408-9 (2012) (*Hill* test is not the only test for prejudice); *Kovacs v. United States*, 744 F.3d 44, 52 (2d Cir. 2014) (prejudice where showing that defendant would have continued to negotiate). *Strickland* mandates that courts employ a case-by-case "totality of the

circumstances" standard for evaluating a defendant's claim of prejudice. 466 U.S. at 695. In Appellant's case, the Court of Appeals determined that given Appellant's ties to the United States and the near certainty of deportation that accompanied his guilty plea, that if Torres had been properly advised of the high risk of deportation, it would have been rational for him to reject the plea. *Torres*, at *11-12.

> ### ii. A defendant does not have to demonstrate that he would have gone to trial; he just needs to demonstrate that it would have been rational to reject the plea agreement.

The state argues that a noncitizen defendant must demonstrate that had he been aware of the adverse immigration consequences, he would have rejected the plea bargain and gone to trial. State's Br. at 14. This requirement that a defendant show he would have "insisted on going to trial" is the test set forth in *Hill v. Lockhart*. 474 U.S. at 59. However, the Supreme Court's recent jurisprudence makes clear that the *Hill* test is not the "sole" test for demonstrating prejudice arising from plea negotiations. *Frye,* at 1408-1409. Rather, a defendant can demonstrate it would have been rational to reject the plea bargain by showing that he would have gone to trial or that he would have continued to negotiate in hopes of securing a more immigration-friendly plea deal.

The Supreme Court has had several opportunities in recent years to clarify the application of the *Strickland* prejudice requirement to situations where the

"proceeding" at issue is a plea bargain, rather than a trial. In *Padilla*, as well as in two more recent cases considering claims of ineffective assistance of counsel during plea negotiations—*Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012); *Frye*, 132 S.Ct. at 1405—the Court recognized the significance of negotiated pleas to defendants in the contemporary criminal justice system. The Court noted in *Lafler* the sheer number of defendants whose cases end in a plea agreement. 132 S.Ct. at 1388. (stating that 97% of federal convictions and 94% of state convictions are the result of guilty pleas). Additionally, the Court found that a defendant's proof of prejudice differs depending on the context of the case and the plea negotiations. *Id*. It is not rigid. Demonstrating prejudice "[i]n the context of pleas [means] a defendant must show the outcome of the plea process would have been different with competent advice." *Id*. at 1384.

For example, in *Frye*, the defendant argued that the ineffective assistance of his counsel caused him to miss out on a plea offer that would have been more favorable than the outcome he ended up with because his attorney failed to convey the better offer. In that case, the Court found that to show prejudice the defendant needed to "demonstrate a reasonable probability that [he] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel." *Frye, Id*. at 1409. Additionally, the Court said that the defendant needed to "demonstrate a reasonable probability the plea would have been entered without the prosecution

canceling it or the trial court refusing to accept it." "To establish prejudice in this instance," the court said, "it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charges or a sentence of less prison time." *Id.*

This Court has also recognized that cases with different contexts require different prejudice analyses. *Ex parte Argent*, 393 S.W.3d 781, 784 (Tex. Crim. App. 2013) (In light of the Supreme Court's decisions in *Lafler* and *Frye*, adopting the holding that "to establish prejudice in a claim of ineffective assistance of counsel in which a defendant is not aware of a plea-bargain offer, or rejects a plea-bargain because of bad legal advice, the applicant must show a reasonable probability that: (1) he would have accepted the earlier offer if counsel had not given ineffective assistance; (2) the prosecution would not have withdrawn the offer; and (3) the trial court would not have refused to accept the plea bargain.").

The Supreme Court's recent decisions regarding prejudice in plea negotiations have shown that the context of the plea negotiation and its outcome will dictate how a defendant can demonstrate prejudice. Thus, when a noncitizen defendant shows that ineffective assistance of counsel affected the outcome of her plea bargaining negotiation, she has demonstrated prejudice. The reviewing court should look to the particular circumstances of the case to determine what would have been rational, and should consider all relevant factors. *Roe*, 528 U.S. at 480.

### iii. It is "rational" for a defendant to reject a plea bargain because of its deportation consequences.

It is "rational" for a defendant to reject a plea agreement in favor of pursuing an alternative plea agreement, or a trial, even at the risk of a more serious conviction or sentence, because the defendant wants to avoid deportation. *See, e.g., State v. Sandoval*, 249 P.3d 1015, 1021-1023 (Wash. 2011); *United States v. Orocio*, 645 F.3d 630, 645 (3d Cir. 2011) (abrogated on retroactivity grounds by *Chaidez v. United States*, 133 S.Ct. 1103 (2013)). *See also Salazar*, 361 S.W.3d at 102 (holding the decision to reject an offer of up to two years in state jail and up to a $10,000 fine, to face a potentially longer sentence at trial, in order to avoid deportation would have been rational given defendant's lack of criminal history and young age); *Leal*, 427 S.W.3d at 463 (holding it would have been rational for defendant to reject the plea if he'd understood the deportation risk where the plea agreement only reduced the defendant's sentence by $1,500 and eighty days in jail).

The test to determine whether rejecting a plea would have been rational is a totality of the circumstances test per *Strickland*, 466 U.S. at 695. The reviewing court should consider all relevant factors to determine what plea decisions would have been rational for a noncitizen defendant under the test set forth in *Padilla. See also Roe*, 528 U.S. at 480. The determination of whether the defendant suffered prejudice from defense counsel's failure to advise regarding the immigration

consequences of a plea must include consideration of the defendant's particular circumstances informing his desire to remain in the United States, such as length of residence, family ties in the U.S., lack of ties to the country of origin, and employment history. Accordingly, courts in Texas, as well as in other jurisdictions, have determined that it is "rational" for a noncitizen defendant to reject a plea agreement in order to negotiate another plea agreement or go to trial because the defendant wants to avoid deportation. *Salazar*, 361 S.W.3d at 102; *Leal*, 427 S.W.3d at 463; *Orocio*, 645 F.3d at 645 ("it is not at all unreasonable to go to trial and risk a ten-year sentence and guaranteed removal, but with the chance of acquittal and the right to remain in the United States, instead of pleading guilty to an offense that, while not an aggravated felony, carries 'presumptively mandatory' removal consequences")(abrogated on retroactivity grounds by *Chaidez*, 133 S.Ct. 1103); *see, e.g.*, *Commonwealth v. Clarke*, 949 N.E.2d 892, 903 (Mass. 2011) (Prejudice may be shown through the "presence of 'special circumstances' that support the conclusion that the defendant placed, or would have placed, particular emphasis on immigration consequences in deciding whether to plead guilty").

Texas courts of appeal, as well as courts of last resort in other jurisdictions have held that when considering whether rejecting a plea bargain would have been rational, the court should consider the defendant's desire to avoid deportation. *See*

*Ex parte Cisneros*, No. 08-11-00180-CR, 2013 WL 1281995, at *6 (Tex. App. El Paso, Mar. 28, 2013) (unpublished opinion)(the court weighed the risk of deportation and the time elapsed between the guilty plea and deportation proceedings when considering whether rejecting the guilty plea would have been rational); *Denisyuk v. State*, 30 A.3d 914, 929-930 (Md. 2011); *Orocio*, 645 F.3d at 645; *Sandoval*, 249 P.3d at 1021-1023 (defendant's permanent resident status supported court's determination that it would have been rational for defendant to risk increased prison time). Such a prejudice inquiry is consistent with the *Padilla* court's recognition that "deportation is an integral part—indeed, sometimes the most important part—of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes." 559 U.S. at 364.

Appellate courts in Texas have also found that it would have been "rational" given a noncitizen defendant's unique circumstances to reject a plea bargain and face a trial to avoid deportation. In *Salazar,* the Eastland Court of Appeals said, "[i]t would be perfectly rational to take the chance on acquittal at the risk of a maximum of two years state jail time and a fine of $10,000 rather than enter a guilty plea that would result in certain deportation, separating [the defendant] from his family and the opportunities that come from being a legal resident of the United States." 361 S.W.3d at 103. *See also Leal*, 427 S.W.3d at 463.

**iv. A defendant need not demonstrate that the case would have resulted in a more favorable outcome, only that he would have rejected the plea bargain in favor of other proceedings.**

The defendant does not need to demonstrate that the case would have resulted in a more favorable outcome to demonstrate prejudice. The defendant just needs to show that a particular proceeding (the plea proceeding in a case like Appellant's) would not have happened. This Court has held that a defendant "need not show that his case would have received a more favorable disposition had he gone to trial" or that he would have achieved a more favorable plea agreement if he'd continued to negotiate; only that it would have been rational to reject the initial plea to pursue a trial or a different plea agreement. *Johnson v. State*, 169 S.W.3d 223, 231 (2005) (applying the *Strickland* analysis to defendant's claim that his attorney's ineffective assistance of counsel prevented him from testifying). The defendant can show that the decision to reject the guilty plea would have been rational by showing that he would have proceeded to trial because he wanted to avoid deportation or that he would have continued to negotiate in an effort to reach a plea that avoided or mitigated the deportation consequence.

**v. The Court of Appeals conducted a proper prejudice inquiry under *Padilla***

In Appellant's case, the Court of Appeals correctly conducted a prejudice inquiry under *Strickland* and *Hill v. Lockhart*, as recognized by *Padilla*. The Court

of Appeals stated that in determining prejudice, it needed to consider the circumstances of the plea bargain, as well as the impact of the advice Torres did not receive on his decision to plead guilty. *Torres, Id.* *11. The Court considered Appellant's history in the United States, including that he was a "[legally permanent resident], a native English speaker, and has resided in the United States since he was a small child." *Id*. The Court also considered the defendant's statement in his affidavit that he "accepted the plea deal because trial counsel advised him that he would not have to go to jail and that the deferred adjudication meant the charges would eventually be dismissed." *Id*. These are all factors that a court can weigh under *Padilla* in determining whether it would have been rational for a defendant to reject a plea bargain in favor of pursuing further negotiation or a trial. Finally, the Court determined that "[i]n viewing the totality of the circumstances," Torres had sufficiently demonstrated that he would not have accepted the plea if he had understood the risk of deportation. *Id*.

## XII.  Conclusion and Prayer

For the reasons stated in this *Amici Curiae* Brief and in the Appellant's Brief, the National Immigration Project and TFDP pray that this Court affirm the *Opinion* and judgment of the Eighth Court of Appeals.

Respectfully submitted,

Sejal Zota
National Immigration Project of the
National Lawyers Guild
14 Beacon Street Suite 602
Boston, Massachusetts 02108
Phone: 617-227-9727
Fax: 617-227-5495
sejal@nipnlg.org
North Carolina Bar No. 36535

Susanne Pringle
Texas Fair Defense Project
510 South Congress Avenue, Suite 208
Austin, TX 78704
Phone: 512-637-5220
Fax: 512-637-5224
springle@fairdefense.org
Texas Bar No. 24083686

Michael Mowla
445 E. FM 1382 #3-718
Cedar Hill, Texas 75104
Phone: 972-795-2401
Fax: 972-692-6636
michael@mowlalaw.com
Texas Bar No. 24048680

**/s/ Michael Mowla**
By: Michael Mowla

## XIII. Certificate of Service

This certifies that on February 10, 2015, a true and correct copy of this document was served on Lily Stroud, El Paso County Assistant District Attorney, by email to lstroud@epcounty.com, on Lisa McMinn, the State Prosecuting Attorney, by email to Lisa.McMinn@spa.texas.gov and information@spa.texas.gov, and John Messinger, john.messinger@spa.state.tx.us. *See* Tex. Rule App. Proc. 9.5 (2015) and Tex. Rule App. Proc. 68.11 (2015)

**/s/ Michael Mowla**
By: Michael Mowla

## XIV. Certificate of Compliance with Tex. Rule App. Proc. 9.4

This certifies that this document complies with the type-volume limitations because this document is computer-generated and does not exceed 15,000 words. Using the word-count feature of Microsoft Word, the undersigned certifies that this document contains 6,491 words in the document *except* in the following sections: caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix. This document also complies with the typeface requirements because it has been prepared in a proportionally-spaced typeface using 14-point font. *See* Tex. Rule App. Proc. 9.4 (2015).

**/s/ Michael Mowla**
By: Michael Mowla

# APPENDIX A

# APPENDIX A CONTENTS

L. Coyle, B. Hines & L. Teran, *Basics of Immigration Law for Texas Criminal Defense Attorneys,* Texas Criminal Defense Lawyers Association (2003) ....................................A1

# THE CRIMINAL DEFENSE LAWYERS PROJECT
## A PROJECT OF THE TEXAS CRIMINAL DEFENSE LAWYERS ASSOCIATION

# BASICS OF IMMIGRATION LAW
# FOR
# TEXAS CRIMINAL DEFENSE ATTORNEYS

This publication is funded by a grant
from the Texas Court of Criminal Appeals.



## An Overview and Analysis by
## Lynn Coyle,
## Barbara Hines
## and
## Lee Teran

SPONSORED BY:
THE CRIMINAL DEFENSE
LAWYERS PROJECT
1707 NUECES STREET
AUSTIN, TX 78701
(512) 478-2514



COPYRIGHT 2003. THESE MATERIALS MAY NOT BE REPRODUCED IN ANY
FORM WITHOUT THE EXPRESS WRITTEN PERMISSION OF THE
CRIMINAL DEFENSE LAWYERS PROJECT

# APPENDIX B

## APPENDIX B CONTENTS

Immigration Consequences of Criminal Conduct: Drug Convictions, Weapons Offenses, Aggravated Felonies and Crimes Involving Moral Turpitude (June 1990, Austin) ......... B1

The Immigration Act of 1990: Due Process Deportation Defense, Border Enforcement, Special Relief for Central Americans and Immigration Consequences of Criminal Conduct Under the New Law (Feb. 8, 1991, El Paso) ..................................................... B2

Immigration Consequences of Criminal Conduct (February 11, 1994, San Antonio) ................................................................................................. B3, B4

Understanding and Planning for the Immigration Consequences of Criminal Conduct (November 15, 1996, San Antonio) ................................................................ B5

NATIONAL

IMMIGRATION

PROJECT of the NATIONAL LAWYERS GUILD, INC.

CENTRAL AMERICAN REFUGEE
DEFENSE FUND
VISA DENIAL PROJECT

Immigration Consequences of Criminal Conduct:
Drug Convictions, Weapons Offenses, Aggravated Felonies
and Crimes Involving Moral Turpitude

| Speakers | Topics |
|---|---|
| | Morning |
| Jose Salvador Tellez | Intro and Overview |
| Barbara Hines | Finality of Criminal Conv. |
| Dan Kesselbrenner | Crimes of Moral Turpitude |
| Lory Rosenberg | Aggravated Felons, etc. |
| | Lunch |
| | Afternoon |
| Marjorie Meyers | Immigration Crimes |
| Lee Teran | JRADS |
| Kari Converse | Post-conviction remedies |
| Denyse Sabagh | Waivers |
| | Strategy Session |

# The Immigration Act of 1990:
## Due Process, Deportation Defense, Border Enforcement, Special Relief for Central Americans and Immigration Consequences of Criminal Conduct Under the New Law

a skills seminar
presented by

the National Immigration Project of the National Lawyers Guild
and
the Mexican American Bar Association of El Paso

Friday, February 8, 1991

Airport Hilton
El Paso, Texas

B2

# PRE-REGISTRATION FORM

## REGISTRATION FEES

☐ Attorney members of NLG
and of minority bar associations    $85 ($100 at door)

☐ Other attorneys*                              $125 ($140 at door)

☐ NLG law students, legal advocates    $65 ($80 at door)
and non-profit staff

*Join the Guild now and qualify for the NLG member fee. Make a
separate check for $30 payable to the National Lawyers Guild.

*Immigration Law and Crimes* will serve as the primary course materials.
Please bring your copy to the seminar or contact the Immigration Project
about ordering the book in advance from the publisher at a special discount
price. Supplemental materials are included in the registration fee.

Make seminar check payable to National Immigration Project. Return to
Skills Seminar, National Immigration Project, 14 Beacon Street, Suite 506,
Boston, MA 02108.

To ensure that you receive supplemental materials on the day of
the seminar, please return this form by February 4, 1994.

NAME _____

FIRM OR EMPLOYER _____

STREET ADDRESS _____

CITY _____ STATE _____ ZIP _____

PHONE _____ FAX _____

BAR NO. (for CLE purposes)  _____

*For further information, call: National Immigration Project (617) 227-9727*

Boston, Massachusetts 02108
14 Beacon Street, Suite 506

NATIONAL
IMMIGRATION
PROJECT of the NATIONAL
LAWYERS GUILD, INC.

# The National Immigration Project of the National Lawyers Guild

presents a skills seminar on

# IMMIGRATION CONSEQUENCES OF CRIMINAL CONDUCT

Friday, February 11, 1994

Holiday Inn Riverwalk North
110 Lexington Avenue
San Antonio, Texas

B3

# IMMIGRATION CONSEQUENCES OF CRIMINAL CONDUCT

Congress is contemplating sweeping changes to immigration and criminal laws that will affect the foreign born in criminal proceedings. In this full-day seminar, national and local experts will analyze recent legislative developments, examine how criminal conduct affects non-citizens, and provide strategies for avoiding adverse immigration consequences and for obtaining post-conviction relief.

## PROGRAM

I. Introduction and Overview of Recent Developments

II. Finality of Criminal Convictions

III. Crimes of Moral Turpitude

IV. Aggravated Felons, Drugs and Current Legislation

V. Immigration Crimes:
   Smuggling, Transporting, Entry & Reentry

VI. Post-Conviction Remedies:
   Statutory and Federal Issues

VII. Waivers

VIII. Strategy Session on Hypothetical Cases

*REGISTRATION: 8:30 - 9:00 A.M.*
*PROGRAM: 9:00 A.M. - 5:00 P.M.*

## SPEAKERS

**EMILIO "CHITO" DAVILA, JR.** has been in private practice in Laredo, Texas since 1980. Formerly an Assistant U.S. Attorney for the Southern District of Texas, he is Board Certified in Criminal Law by the Texas Board of Legal Specialization.

**BARBARA HINES** is Co-Director for the Lawyers Committee for Civil Rights Under Law for Texas, Immigrant and Refugee Rights Project, and was an advisor to President Clinton's transition team for INS. She is in private practice in Austin, Texas, and is Board Certified in Immigration and Nationality Law by the Texas Board of Legal Specialization. She received the 1992 American Immigration Lawyers Association's (AILA) Jack Wasserman Memorial Award for Excellence in Litigation and is a member of the National Immigration Project.

**DAN KESSELBRENNER** is Director of the National Immigration Project and was an advisor to President Clinton's transition team for INS. He is co-author of *Immigration Law and Crimes*, published by Clark Boardman Callaghan.

**MARJORIE A. MEYERS** practices with the law firm of Bennett & Secrest in Houston, Texas, specializing in the defense of individuals accused of criminal conduct. She was formerly an Assistant Federal Public Defender and has written and lectured extensively on federal criminal law.

**JOSE MORENO** is the Director of Diocesan Migrant and Refugee Services in El Paso and a former staff attorney with Texas Rural Legal Aid.

**LORY ROSENBERG** is the Director of the Legal Action Center of the American Immigration Law Foundation in Washington, D.C. and was an advisor to President Clinton's transition team for INS. She is the author of the *Fair Hearings Pleadings Manual*, co-author of *Winning Waivers* and *Immigration Law and Crimes*, and a contributor to *Immigration Law and Defense*. She received the 1988 AILA Edith Lowenstein Award for Excellence in Advancing the Practice of Immigration Law and is a member of the Steering Committee of the National Immigration Project.

**ROBERT SHIVERS** practices with the law firm of Shivers & Shivers in San Antonio, Texas, and is Board Certified in Immigration and Nationality Law by the Texas Board of Legal Specialization. He is an instructor in immigration law at St. Mary's University Law School, and is a member of the National Immigration Project.

**LEE TERAN** is Director of the St. Mary's University Law School Immigration Clinic and is Board Certified in Immigration and Nationality Law by the Texas Board of Legal Specialization. She received the 1992 AILA Jack Wasserman Memorial Award for Excellence in Litigation and is a member of the Steering Committee of the National Immigration Project.

**Applications for Continuing Legal Education Credit are pending.** All proceeds of the skills seminar support the work of the National Immigration Project, a network of lawyers and legal and community workers engaged in immigration law and practice. The Project works to diminish discrimination against the foreign born and to preserve, defend and extend the rights of all immigrants in the United States.

*The skills seminar will take place in conjunction with the Texoma regional conference of the National Lawyers Guild on February 12, 1994. The theme of the conference is Law in the Public Interest: Which Public? Whose Interest? Workshops include the Omnibus Crime Act, the Post-NAFTA Agenda, Employment Law & Civil Rights, Organizing the Plaintiffs Bar, and Public Interest Law Careers. We encourage you to attend the entire conference as well as the seminar. For more information about the seminar or the conference, call the Immigration Project at (617) 227-9727.* **The site is wheelchair accessible.**

THE SAN ANTONIO CHAPTER
OF THE MEXICAN AMERICAN BAR ASSOCIATION
AND
THE LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER LAW OF TEXAS
IMMIGRANT & REFUGEE RIGHTS PROJECT


PRESENT A SEMINAR ON:



# UNDERSTANDING AND PLANNING
# FOR THE
# IMMIGRATION CONSEQUENCES
# OF CRIMINAL CONDUCT


"Minimizing the Effect of Criminal Conduct
on a Client's Immigration Status"




Mexican American Cultural Center
San Antonio, Texas
November 15, 1996

B5

# APPENDIX C

# APPENDIX C CONTENTS

Criminal Acts and the Consequences for Foreign Nationals, Advanced Criminal Law Course (State Bar of Texas, July 26, 1999, Dallas) ......................................................... C1

Criminal Acts and the Consequences for Foreign Nationals, Advanced Criminal Law Course (State Bar of Texas, July 18, 2000, San Antonio) ............................................. C3

Criminal Acts and the Consequences for Foreign Nationals, Advanced Criminal Law Course (State Bar of Texas, July 16-19, 2001, Corpus Christi) ...................................... C5

Criminal Acts and the Consequences for Foreign Nationals, Advanced Criminal Law Course (State Bar of Texas, July 22-25, 2002, Houston) ............................................... C7

Federal Crimes and Immigration, Advanced Criminal Law Course (State Bar of Texas, July 28-31, 2003) ........................................................................................................ C9

Immigration Consequences of Crime, Advanced Criminal Law Course (State Bar of Texas, July 25, 2004) .................................................................................................... C10

Immigration Consequences of Criminal Conduct, Advanced Criminal Law Course (State Bar of Texas, July 18-21, 2005, Corpus Christi) ........................................................ C11

Immigration Consequences of Criminal Convictions: What You Don't Know Can Hurt You, Advanced Criminal Law Course (State Bar of Texas, July 28-31, 2008, San Antonio) ............................................................................................................... C13

Immigration Consequences of Criminal Convictions, Advanced Criminal Law Course (State Bar of Texas, July 20-23, 2009, Dallas) ............................................................ C15

Immigration Issues, Advanced Criminal Law Course (State Bar of Texas, July 26-29, 2010, San Antonio) ..................................................................................................... C17

Family Based Immigration, Criminal Acts, and the Consequences for Foreign Nationals, Advanced Criminal Law Course (State Bar of Texas, July 18-21, 2011, Houston) ....... C18

# Criminal Acts and the Consequences

# for Foreign Nationals

by

**Thomas Esparza, Jr. Attorney at Law***

**Elizabeth Martinez, Attorney at Law****

**Ajay Choudhary*****

**Thomas Esparza, Jr. A Professional Corporation**

**LaMadrid Building**

**1811 South First Street**

**Austin, Texas 78704**

C1

# Advanced Criminal Law Course

# July 26-29, 1998

# Dallas, Texas

# July 26, 1999

# F

# Thomas Esparza, Jr., Attorney at Law

A Professional Corporation

La Madrid Building , 1811 So. 1st., Austin, Texas 78704

512-441-0062 / 512-441-0725

## EDUCATION

- McAllen High School-1970.

- Texas A & M University-1974.

- University of Texas, School of Law-1977. Edited weekly/monthly papers..

## LEGAL AND PROFESSIONAL EXPERIENCE

- Licensed to practice November, 1977.

- Board Certified Specialist Immigration and Nationality Law October 1985 by the Texas Board of Legalization; renewed in 1990 and 1995.

- Waco-McLennan County Legal Aid-1977-1978.

- Private Practice in Austin, Texas, 1978-present.

- Capital Area Mexican-American Lawyers, President, 1988-1989.

- State Bar Committee-Laws Relating to Immigration, 1985-1988 & 1998 to present.

- Member, State Bar College-1997 to present.

C2

# Criminal Acts

# and the Consequences for Foreign Nationals

## by

## Thomas Esparza, Jr. Attorney at Law·

**with help from**

**Elizabeth Martinez, LaSalle County Attorney ⁑**

**Jonathan Love, INS Assistant District Council, San Antonio, Texas⁂**

**Thomas Esparza, Jr. A Professional Corporation**

**LaMadrid Building**

**1811 South First Street**

**Austin, Texas 78704**

# Advanced Criminal Law Course

# San Antonio, Texas

# July 18, 2000

, , Edition

# Chapter 11

## Table of Contents

I. Introduction 1

II. Conviction and Sentencing 2

    A. Why is the term "conviction" important for Immigration Purposes? 2

    B. What was not a conviction? 2

    C. Congress Changes the Rules 2

    D. Once Convicted, Stay Convicted 2

    E. "Time in Jail " is not effected by suspension of the imposition of a sentence. 3

    F. Application date of the revised definition of conviction is retroactive 4

III. Criminal Classes of aliens ineligible for visas or admission. 4

    (A) Conviction of certain crimes. 4

    (B) Multiple criminal convictions. 4

    (C) Controlled substance traffickers. 5

    (D) Prostitution and commercialized vice. 5

    (E) Certain aliens involved in serious criminal activity who have asserted immunity from prosecution. 5

IV. Grounds for Removal 6

    A. Criminal and related grounds. 6

# CRIMINAL ACTS

# AND THE CONSEQUENCES FOR FOREIGN NATIONALS

# THOMAS ESPARZA, JR. ATTORNEY AT LAW*

**Thomas Esparza, Jr. A Professional Corporation**

**LaMadrid Building**

**1811 South First Street**

**Austin, Texas 78704**

# ADVANCED CRIMINAL LAW COURSE

# July 16 – 19, 2001

# Corpus Christi, Texas

# CHAPTER 17

**With help from:**

**Elizabeth Martinez, LaSalle County Attorney \*\***

**Jonathan Love, INS Assistant District Council, San Antonio, Texas\*\*\***

## *Thomas Esparza, Jr., Attorney at Law,*

A Professional Corporation

La Madrid Building , 1811 So. 1st.

Austin, Texas 78704

512-441-0062 / 512-441-0725

## EDUCATION

- McAllen High School-1970.

- Texas A & M University-1974.

- University of Texas, School of Law-1977. Edited weekly/monthly papers.

## LEGAL AND PROFESSIONAL EXPERIENCE

- Licensed to practice November, 1977.

- Member of the American Immigration Lawyers Association since 1980

- Board Certified Specialist - Immigration and Nationality Law, October 1985,

C6

# CRIMINAL ACTS AND THE CONSEQUENCES FOR

# FOREIGN NATIONALS

## Thomas Esparza, Jr. Attorney at Law*

**with help from**

Elizabeth Martinez LaSalle County Attorney **

Jonathan Love, INS Assistant District Council, San Antonio, Texas***

## Thomas Esparza, Jr. A Professional Corporation

## LaMadrid Building

### 1811 South First Street

### Austin, Texas 78704

C7

# State Bar of Texas

# ADVANCED CRIMINAL LAW COURSE

# July 22 - 25, 2002

# Houston, Texas

# Chapter 21

# Table of Contents

I. Introduction 1

II. Conviction and Sentencing 2

    A. What *was not* a conviction? 2
    B. Congress Changes the Rules 2
    C. Once Convicted, Always Convicted 3
    D. "Time in Jail" is not affected by suspension of imposition of a sentence 4
    E. Retroactive Application date of the revised definition of conviction. 4

III. Criminal Classes of aliens ineligible for visas or admission. 4

    A. Conviction of certain crimes. 5
    B. Multiple criminal convictions. 5
    C. Controlled substance traffickers. 5
    D. Prostitution and commercialized vice. 5
    E. Certain aliens who have asserted immunity from prosecution. 5
    F. Waiver Authorized for certain aliens. 6

IV. Grounds for Removal 7

# FEDERAL CRIMES AND IMMIGRATION

## JOSE I. GONZALEZ-FALLA
Supervisory Asst. Federal Public Defender
Corpus Christi, Texas
(361) 888-3532

State Bar of Texas
# 29TH ANNUAL ADVANCED CRIMINAL LAW COURSE
July 28-31, 2003



CART     LOGIN     HELP     CONTACT US

**TexasBar**CLE                                    **TexasBar**Books

Home  |  State Bar of Texas  |  Texas Young Lawyers  |  Texas Bar Journal  |  Search CLE & Books

Online Classes / MP3
Webcasts / Phone
Seminars
Publications
Online Library
Casemaker
DVD CLE
Group Discounts
Suggested CLE
Law Practice Mgmt
Ten Minute Mentor
CLE Search
Login





Report your
# MCLE
hours.  Click here.

## Starting
your law
## practice?
Click here.

Privacy Notice
Terms & Conditions
Copyright Notice

**YOUR ONLINE LIBRARY**



**Search Results - 46 articles found**
from Criminal Law Course 2004
(Viewing articles requires the free Acrobat Reader software)

Keyword Search
Course Search
Subscribe Now!

36. *Immigration Consequences of Crimes*
July 25, 2004, size: 147,184 bytes (est. download time at 56K, less than one minute)
Lee J. Teran
From **Criminal Law Course 2004 >**   All articles
View Table of Contents / Buy Article

37. *Actual Innocence: "The Basics"*
July 25, 2004, size: 691,359 bytes (est. download time at 56K, 1.6 minutes)
Barbara P. Hervey
From **Criminal Law Course 2004 >**   All articles
View Table of Contents / Buy Article

38. *The Grand Jury and Privileges*
July 25, 2004, size: 622,952 bytes (est. download time at 56K, 1.5 minutes)
Edward A. Mallett
From **Criminal Law Course 2004 >**   All articles
View Table of Contents / Buy Article

39. *Pretrial Motions in State Court*
July 25, 2004, size: 210,067 bytes (est. download time at 56K, less than one minute)
Betty Blackwell
From **Criminal Law Course 2004 >**   All articles
View Table of Contents / Buy Article

40. *Opening Statements: You Never Get a Second Chance to Make a First Impression*
July 25, 2004, size: 65,593 bytes (est. download time at 56K, less than one minute)
Jeffrey A. Kearney
From **Criminal Law Course 2004 >**   All articles
View Table of Contents / Buy Article

<< Previous Page   Next Page >>

Jump to Articles: (  First Page  21-25  26-30  31-35  **36-40**  41-45  46-46  )

C 10

# IMMIGRATION CONSEQUENCES
# OF CRIMINAL CONDUCT

## JOSEPH A. VAIL
University of Houston Law Center
Immigration Clinic

State Bar of Texas
# 31ST ANNUAL ADVANCED
# CRIMINAL LAW COURSE

July 18-21, 2005
Corpus Christi

## CHAPTER 30

C 12

# IMMIGRATION CONSEQUENCES OF CRIMINAL CONVICTIONS:
# WHAT YOU DON'T KNOW *CAN* HURT YOU

## JOSEPH REINA
## AND
## BRIAN K. BATES
### Reina & Bates Immigration Law Group

DALLAS
1120 EMPIRE CENTRAL PLACE
DALLAS, TEXAS 75247
TELEPHONE: 214 905 9100
FACSIMILE: 214 905 9510

IRVING
6341 CAMPUS CIRCLE DIRVE EAST
IRVING, TEXAS 75063
TELEPHONE: 972 756 6000
FACSIMILE: 972 756 6007

CHICAGO
123 SOUTH ASHLAND AVENUE
CHICAGO, ILLIONOIS 60607
TELEPHONE: 312 733 2100
FACSIMILE: 312 733 0772

AUSTIN
701 BRAZOS, SUITE 500-2088
AUSTIN, TEXAS 78701
TELEPHONE: 512 320 9190
FACSIMILE: 512 334 6001

HOUSTON – WESTPARK
6260 WESTPARK DRIVE, SUITE 110
HOUSTON, TEXAS 77060
TELEPHONE: 281 820 6100

HOUSTON - NORTHPOINT
123 NORTHPOINT DRIVE, SUITE 190
HOUSTON, TEXAS 77060
TELEPHONE: 281 558 9500
FACSIMILIE: 281 448 6767

AMARILLO
112 S.W. 8TH AVENUE, SUITE 301-001
AMARILLO, TEXAS 79101
TELEPHONE: 806 350 7420
FACSIMILE: 806 350 7421

# State Bar of Texas
# 34th ANNUAL ADVANCED CRIMINAL LAW COURSE
July 28-31, 2008
San Antonio

## CHAPTER 26

C 14

# IMMIGRATION CONSEQUENCES OF CRIMINAL CONVICTIONS

Presented by:

**MARINA GARCIA MARMOLEJO**, *San Antonio*
Thompson & Knight LLP

Written by:

**MARINA GARCIA MARMOLEJO**
Thompson & Knight LLP
4040 Broadway, Ste 615
San Antonio, Texas 78209
(210) 225-2285

**DANIEL SERNA**
Serna & Associates PLLC
20985 IH 10 West
San Antonio, TX 78257
(210) 228-0095

Recent Legislative Developments
**DAVID LAWRENCE**

C15

State Bar of Texas
# 35th ANNUAL ADVANCED CRIMINAL LAW COURSE
July 20 – 23, 2009
Dallas

# CHAPTER 10

## TABLE OF CONTENTS

I.   INTRODUCTION........................................................................................................................ 1

II.  OVERVIEW OF IMMIGRATION PROCEEDINGS.............................................................. 1
     A.  BURDEN OF PROOF FOR DEPORTABILITY.......................................................... 1
     B.  RIGHT TO COUNSEL, BUT NOT APPOINTED COUNSEL........................................
         1

III. ADMINISTRATION OF IMMIGRATION LAW.................................................................... 1

IV.  IMMIGRATION CONSEQUENCES FOR CRIMINAL ALIENS........................................ 2
     A.  DEPORTATION............................................................................................................. 2
     B.  INADMISSIBILITY....................................................................................................... 3
     C.                                       DENIAL      OF      DISCRETIONARY      RELIEF
         ........................................................................3
     D.  NATURALIZATION RESTRICTIONS.......................................................................... 3

V.   DEFINITION OF "CONVICTION" AND "SENTENCE" FOR IMMIGRATION PURPOSES...................
     3
     A.  STATUTORY DEFINITION-"CONVICTION" UNDER 8 U.S.C.§ 1101 (a)(48)(A)............................
         3
         1.  "Conviction" Prior to Illegal Immigration Reform and Immigrant Responsibility
             Act of 1996 ("IIRIRA)........................................................................................ 4
         2.  "Conviction" Defined Post IIRIRA...........................................................................
             4
         3.  Appeals of Convictions Pre-IIRIRA and Post-IIRIRA............................................
             5
         4.  Pre-trial Diversion............................................................................................... 6
         5.  "No contest" Pleas............................................................................................... 6
         6.  Juvenile Dispositions........................................................................................... 6
     B.  STATUTORY DEFINITION-"SENTENCE" UNDER 8 U.S.C.§ 1101 (a)(48)(B)...............................
         6
         1.  Vacated Sentences............................................................................................... 7
         2.  Probation on Probated Sentences...........................................................................
             7
         3.  Deferred Adjudication........................................................................................... 7
         4.  Dismissals........................................................................................................... 7

VI.  AGGRAVATED FELONIES.................................................................................................. 7
     A.  OVERVIEW................................................................................................................... 7
     B.  AGGRAVATED FELONIES TRIGGERED BY ONE-YEAR TERM OF INCARCERATION..............

C.16

# IMMIGRATION ISSUES

Written and Presented by:
**JODILYN M. GOODWIN,** *Harlingen*
Law Office of Jodi Goodwin

Presented by:
**DOUGLAS M. O'BRIEN,** *Houston*
Moen Cain & O'Brien

State Bar of Texas
**36th ANNUAL**
**ADVANCED CRIMINAL LAW COURSE**
July 26-29, 2010
San Antonio

**CHAPTER 36**

C 17

# FAMILY BASED IMMIGRATION, CRIMINAL ACTS, AND THE CONSEQUENCES FOR FOREIGN NATIONALS

Presenter
**THOMAS ESPARZA, JR.**
Attorney at Law*
Thomas Esparza, Jr. A Professional Corporation
LaMadrid Building
1811 South First Street
Austin, Texas 78704
512-441-0062
tom@tomesparza.com

Co-Author
**JACQUELINE L. WATSON**
Thomas Esparza, Jr. A Professional Corporation
LaMadrid Building
1811 South First Street
Austin, Texas 78704
512-441-0062
Jackie@tomesparza.com

State Bar of Texas
**37th ANNUAL**
**ADVANCED CRIMINAL LAW COURSE**
July 18-21, 2011
Houston

**CHAPTER 33**

C 18

# APPENDIX D

🅐 Neutral

As of: February 7, 2015 8:23 PM EST

# *Ex parte Torres*

Court of Appeals of Texas, Eighth District, El Paso

March 21, 2014, Decided

No. *08-12-00244-CR*

**Reporter**
2014 Tex. App. LEXIS 3168; 2014 WL 1168929

EX PARTE MANUEL TORRES,

**Notice:** PLEASE CONSULT THE TEXAS RULES OF APPELLATE PROCEDURE FOR CITATION OF UNPUBLISHED OPINIONS.

**Subsequent History:** Petition for discretionary review refused by *Ex parte Torres, 2014 Tex. Crim. App. LEXIS 1372 (Tex. Crim. App., Sept. 17, 2014)*

**Prior History:** [*1] Appeal from the 34th Judicial District Court of El Paso, Texas. (TC# 20110D01278).

## Core Terms

deportable, immigration, parte, removal, defense counsel, guilty plea, aggravated felony, immigration consequences, pet, retroactivity, charges, offenses, trial court, ineffective, designated, grounds, removal proceedings, alien, trial counsel, automatic, deferred, deportation proceedings, habeas corpus, plea hearing, mandatory, felonies, advice, courts, papers

## Case Summary

### Overview

HOLDINGS: [1]-Counsel's admission that he did not explicitly state that defendant's post-guilty plea removal was a legal certainty and his admitted failure to research which offenses constituted aggravated felonies under the Immigration and Nationality Act constituted ineffective assistance under the Sixth Amendment in defendant's case of possession of a controlled substance and robbery; [2]-Defendant was prejudiced because he claimed that had he received proper counsel, he would have delayed the plea until he was eligible for cancellation of removal and sought an immigration-neutral plea agreement or gone to trial.

### Outcome

Judgment reversed and judgment was rendered granting the writ of habeas corpus.

## LexisNexis® Headnotes

Criminal Law & Procedure > ... > Standards of Review > Abuse of Discretion > General Overview

Criminal Law & Procedure > ... > Appeals > Standards of Review > General Overview

Evidence > Burdens of Proof > Allocation

Evidence > Burdens of Proof > Preponderance of Evidence

*HN1* The applicant in a habeas corpus proceeding bears the burden of proving he is entitled to post-conviction relief by a preponderance of the evidence. An appellate court reviews the trial court's grant or denial of habeas corpus for abuse of discretion, viewing the facts in the light most favorable to the trial court's ruling and deferring to the trial court in matters involving a determination of credibility or demeanor.

Constitutional Law > ... > Fundamental Rights > Criminal Process > Assistance of Counsel

Criminal Law & Procedure > ... > Counsel > Effective Assistance of Counsel > Tests for Ineffective Assistance of Counsel

Evidence > Burdens of Proof > Preponderance of Evidence

*HN2* The Sixth Amendment provides a defendant with the constitutional right to effective assistance of counsel. Counsel renders constitutionally ineffective assistance warranting reversal where (1) his performance fell below an objective standard of reasonableness, and (2) that the defendant suffered prejudice, i.e., that there was a reasonable probability that but for the actions of defense counsel, the outcome of proceedings would be different. On habeas review, an applicant must establish both Strickland prongs by a preponderance of the evidence.

Criminal Law & Procedure > ... > Counsel > Effective Assistance of Counsel > Pleas

Immigration Law > ... > Grounds for Deportation & Removal > Criminal Activity > General Overview

*HN3* In discharging his duty to effectively represent his client at the pleading stage, defense counsel must advise a non-citizen client of the adverse immigration consequences a guilty plea may carry. The scope of the Padilla duty hinges on how likely it is that a plea agreement will result in removal proceedings. When the law is not succinct and straightforward on that issue, defense counsel discharges his Padilla duties by advising a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. However, when the deportation consequence is truly clear the duty to give correct advice is equally clear.

Criminal Law & Procedure > ... > Counsel > Effective Assistance of Counsel > Pleas

Immigration Law > ... > Grounds for Deportation & Removal > Criminal Activity > General Overview

*HN4* Texas courts applying Padilla have held that where the immigration consequences of a plea are a "virtual certainty," defense counsel has a mandatory duty to explicitly state what those consequences will be. Merely stating that removal proceedings could ensue after a guilty plea to an aggravated felony or drug offense is ineffective in mandatory removal cases; counsel must clearly state that pleading to the offense will result in removal.

Criminal Law & Procedure > ... > Controlled Substances > Possession > General Overview

Criminal Law & Procedure > ... > Crimes Against Persons > Robbery > General Overview

Immigration Law > ... > Grounds for Deportation & Removal > Criminal Activity > Controlled Substance Offenses

Immigration Law > ... > Grounds for Deportation & Removal > Criminal Activity > Enumerated Statutory Crimes

*HN5* Robbery and possession of cocaine are both automatically deportable offenses under immigration law. *8 U.S.C.S. § 1101(a)(43)(G) (2005)*.

Immigration Law > ... > Grounds for Deportation & Removal > Criminal Activity > General Overview

*HN6* Deferred adjudication has the same effect for immigration purposes as a conviction.

Criminal Law & Procedure > ... > Counsel > Effective Assistance of Counsel > Pleas

Immigration Law > ... > Grounds for Deportation & Removal > Criminal Activity > General Overview

*HN7* Counsel's constitutional duty to inform his client that his removal is a virtual legal certainty does not wane merely because counsel believes the probability of actual removal is uncertain based on his past experience and the United States Department of Homeland Security, Immigration and Customs Enforcement division's enforcement priorities. Nor is counsel's ignorance of mandatory deportation consequences under the Immigration and Nationality Act excused by immigration law's complexity, as the Court of Appeals of Texas has held counsel accountable for knowledge, or the ability to attain knowledge, of relevant legal matters that are neither novel nor unsettled. The list of deportable offenses, although extensive, is clearly set out at *8 U.S.C.S. § 1227(a)*, and the list of 21 types of aggravated felonies triggering automatic removal is set out at *8 U.S.C.S. § 1101(a)(43)*. Padilla imposes a duty on defense counsel to know what these crimes are and to advise a client that a plea to any of these crimes will make him or her presumptively deportable.

Criminal Law & Procedure > ... > Counsel > Effective Assistance of Counsel > Pleas

Immigration Law > ... > Grounds for Deportation & Removal > Criminal Activity > General Overview

*HN8* Deprivation of a trial stemming from a Padilla violation is a structural defect, which amounts to a serious denial of the entire judicial proceeding itself, and it demands a presumption of prejudice. The focus of the prejudice inquiry is whether the defendant was deprived of a particular proceeding by counsel's deficient performance, not whether the outcome of that proceeding would have been favorable to the defendant. Therefore, the defendant must demonstrate that but for counsel's performance, he would have availed himself of the proceeding in question. In assessing prejudice, a court is to consider the circumstances surrounding the guilty plea and the gravity of the advice that the defendant did not receive as it pertained to the defendant's plea determination.

**Judges:** Before McClure, C.J., Rivera, and Rodriguez, JJ.

**Opinion by:** YVONNE T. RODRIGUEZ

## Opinion

Manuel Torres appeals the trial court's denial of his writ of habeas corpus application seeking reversal of his guilty plea to one count of felony possession of a controlled substance and one count of robbery. In his sole issue on habeas review, Appellant, a Mexican national with lawful permanent resident ("LPR") status in the United States, complains that his trial counsel rendered constitutionally ineffective assistance by telling him that pleading guilty to the charges "could result in his deportation" instead of informing him that under the Immigration and Nationality Act, those offenses constituted aggravated felonies subjecting him to near-certain automatic removal[1] from the United States. We reverse and render.

### BACKGROUND

Prior to his arrest on the charges at issue in this appeal, Appellant was a resident alien living in El Paso, Texas. He entered the United States presumably without inspection at the age of two or three, when his parents brought him into the country. Appellant has spent most of his life in the United States and is a native English speaker. On May 24, **[*3]** 2006, Appellant received LPR status, according to his affidavit.

Appellant did not testify at the habeas corpus hearing because he was in United States Department of Homeland Security, Immigration and Customs Enforcement division ("ICE") custody.[2] However, in an affidavit submitted to the trial court as part of his habeas application, Appellant stated that he met with an employee from the El Paso County Public Defender's Office while in custody following his arrest, and that he gave her his "biographic information, education, legal status in the country, and the facts of the case." He later met with an attorney from the Public Defender's Officer, who Appellant contended explained the possibility of probation to him, but never the immigration consequences of a plea. After meeting with the original intake employee again near his court date, Appellant finally met with a second attorney, his assigned defense counsel for the case, who "explained how probation works and also about the alternative of doing time on the cocaine charges." At a bond hearing, Appellant received bond and his attorney told him that his father and brother were responsible for ensuring Appellant complied with the bond. **[*4]** However, Torres continued to be detained until he made restitution for an insufficient check he had written in New Mexico.

Appellant said that his attorney visited him during the detention, and "said everything was o.k. and not to worry and that I was going to get deferred probation, and explained to me that it could eventually

---

[1] Although the case law refers to the procedure by which an alien is expelled from the United States as "deportation," *see, e.g., Ex parte De Los Reyes*, 392 S.W.3d 675, 678 (Tex.Crim.App. 2013)("the written admonishment was sufficient to give Applicant notice that a plea of guilty could have resulted in deportation."), such **[*2]** proceedings commenced after April 1, 1997, are properly referred to as removal proceedings. *See Glossary: Deportation*, U.S. Dep't of Homeland Sec., U.S. Citizenship & Immigration Servs., http://www.uscis.gov/tools/glossary/deportation (last visited Feb. 2, 2014)(noting that Congress consolidated deportation proceedings (which expel an alien already present in the United States) and exclusion proceedings (designed to deny an alien entry at the United States border) into one general catch-all proceeding now known as "removal"). "Deportability" is a legal state rendering an "alien[] in and admitted to the United States . . . subject to removal[.]" *Id*. For purposes of harmonizing legal terminology between the courts of this State and the immigration courts, we refer to deportation proceedings as removal proceedings in this opinion.

[2] "[W]hile a state court may entertain a hearing on an applicant's habeas-corpus application filed under Chapter 11 of the Texas Code of Criminal Procedure, it has no authority to compel an inmate's release from federal custody for purposes of attending that hearing." *In re State of Texas*, 08-10-00059-CR, 2010 Tex. App. LEXIS 1193, 2010 WL 597138 (Tex.App.--El Paso Feb. 19, 2010, no pet.)(orig. proceeding, not designated for publication).

be taken off my record." Appellant maintained that he did not meet with his attorney at any time from the date of his release until the date of plea hearing. Appellant stated that shortly before the plea hearing, he again met with his attorney, who told him "about deferred probation for ten years for the robbery charge and 5 years for possession of cocaine charge," with a burglary and marijuana possession charge to be dismissed. Appellant further stated **[\*5]** that "I never went over the plea documents with [my] attorney . . . he just told me to sign them and I did."

Several days after the plea hearing, Appellant was re-arrested on separate charges. Appellant said that his attorney told him that he would try to get the charges he was being held on consolidated into the charges he previously pled to. When Appellant asked his attorney "what ICE was because [he] had been told that [he] had an ICE hold," his attorney explained that immigration authorities had placed the hold "because [he] had pleaded" and advised him to contact an immigration attorney. Appellant maintained that "the first and only time that [his] attorney . . . ever told [him] about an problem with immigration" was during this meeting, after he had pleaded guilty to the charges.

At the habeas hearing, the State called Appellant's defense attorney who handled the plea. Defense counsel testified that he has been an attorney specializing in criminal law since 1985, and that he had been assigned Appellant's case by the Public Defender's Office. Defense counsel confirmed that Appellant met with an intake worker and another attorney before he was assigned to the case. Defense counsel **[\*6]** also testified that he had met with Appellant once at the bond hearing, once to discuss the bad check hold arising from a purportedly erroneous extradition attempt from New Mexico, once at the plea hearing, and once after his plea relating to his second arrest on other charges. Defense counsel disputed Appellant's contention that he "put the plea papers in front of him and just said, Sign them," maintaining that he went through the plea papers "paragraph by paragraph" to ensure that Appellant got "the gist of" each paragraph, that he discussed Appellant's immigration status with him at the plea hearing and probably during the first meeting, and that Appellant was "definitely . . . aware of the possibility of immigration consequences of pleading guilty to two felony offenses." He stated that his specific advice to Appellant was to hire an immigration attorney to warn him of the possible removal consequences.

On cross-examination, defense counsel admitted that he spent between ten and fifteen minutes reviewing the plea papers with Appellant and "[p]robably less than a minute" explaining the immigration consequences section of the plea papers. Defense counsel acknowledged that the trial **[\*7]** court did not admonish Appellant on the record about immigration consequences of the plea. He also admitted that he had never independently reviewed the Immigration and Nationality Act and did not know what constituted deportable offenses under the Act other than what he learned "at seminars." Appellate counsel also questioned defense counsel on the specific advice he gave Appellant and on defense counsel's knowledge of the specific consequences of pleading guilty to an aggravated felony:

Q. And you testified that your specific instruction to him was, Seek immigration counsel; you could be deported because these are felonies.

A. Yes. I didn't make any distinction between the robbery and the possession case because my understanding of the law is they're both considered aggravated felonies and it could result in his deportation, either one on its own.

. . .

Q. So, therefore, you are aware that they were — if they were aggravated felonies, that he is for certain going to be in deportation proceedings?

A. That has not been my experience.

Q. That has not been your experience?

A. No. I see lots of people plead to aggravated felonies and don't end up in deportation proceedings.

. . .

Q. [Y]ou are  [*8] aware that an aggravated felony is defined as a crime that is deportable automatically, that person is deportable if they plead guilty or convicted [sic] of that offense?

A. That's what — you know, I'm not sure what the distinction you're making is because certainly that's the definition of these kinds of felonies or misdemeanors that can get you deported, but not everyone who pleads guilty to those offenses gets deported.

Q. But that wasn't my question.

. . .

Q. [Y]our analysis of an aggravated felony, then, is you don't know if the person is going to be in removal proceedings, is what you are saying, from your experience?

A. Right. I have seen many cases where they pled guilty to felonies that get them deported and they come back and they're still not deported.

. . .

Q. Okay. You never told Mr. Torres that *he will be in deportation proceedings* if he pleads? [Emphasis added].

A. I did not use that terminology, no.

The trial court found that the testimony of Appellant and defense counsel conflicted, and resolved any discrepancies in defense counsel's favor. The trial court also held that defense counsel fully advised Appellant of the immigration consequences of his plea in compliance with constitutional  [*9] requirements.

## DISCUSSION

In his sole issue on appeal, Appellant contends that the trial court abused its discretion by refusing to grant a writ of habeas corpus because his trial counsel failed to properly admonish him of the immigration consequences of his plea deal, thereby rendering his plea involuntary as a result of ineffective assistance of counsel. We agree.

### *Standard of Review*

*HN1* The applicant in a habeas corpus proceeding bears the burden of proving he is entitled to post-conviction relief by a preponderance of the evidence. *Ex parte Richardson, 70 S.W.3d 865, 870 (Tex.Crim.App. 2002)*. We review the trial court's grant or denial of habeas corpus for abuse of

discretion, viewing the facts in the light most favorable to the trial court's ruling and deferring to the trial court in matters involving a determination of credibility or demeanor. *Ex parte Wheeler, 203 S.W.3d 317, 324 (Tex.Crim.App. 2006)*; *Ex parte Cisneros, No. 08-11-00180-CR, 2013 Tex. App. LEXIS 4055, 2013 WL 1281995, at *3 (Tex.App.--El Paso Mar. 28, 2013, no pet.)*(not designated for publication).

*HN2* The *Sixth Amendment* provides a defendant with the constitutional right to effective assistance of counsel. *Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)*. [*10] Counsel renders constitutionally ineffective assistance warranting reversal where (1) his performance fell below an objective standard of reasonableness, and (2) that the defendant suffered prejudice, i.e., that there was a reasonable probability that but for the actions of defense counsel, the outcome of proceedings would be different. *Strickland, 466 U.S. at 687, 104 S.Ct. at 2064*. On habeas review, an applicant must establish both *Strickland* prongs by a preponderance of the evidence. *Ex parte Carpio-Cruz, 08-10-00240-CR, 2011 Tex. App. LEXIS 8930, 2011 WL 5460848, at *7 (Tex.App.--El Paso Nov. 9, 2011, pet. granted)*(not designated for publication), *rev'd on retroactivity grounds*, *PD-1872-11, 2013 Tex. Crim. App. Unpub. LEXIS 351, 2013 WL 1149964 (Tex.Crim.App. Mar. 20, 2013)*(not designated for publication).

### Deficient Performance

In addressing the first prong of *Strickland*, Appellant maintains that defense counsel did not clearly and properly warn him of the impending immigration consequences of his plea, as required by the *Sixth Amendment*. We agree.

*HN3* In discharging his duty to effectively represent his client at the pleading stage, defense counsel must advise a non-citizen client of the adverse immigration consequences a guilty plea may carry. *Padilla v. Kentucky, 559 U.S. 356, 369, 130 S. Ct. 1473, 1483, 176 L. Ed. 2d 284 (2010)*. [*11] The scope of the *Padilla* duty hinges on how likely it is that a plea agreement will result in removal proceedings. "When the law is not succinct and straightforward" on that issue, defense counsel discharges his *Padilla* duties by "advis[ing] a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id*. However, "when the deportation consequence is truly clear . . . the duty to give correct advice is equally clear." *Id*.

*HN4* Texas courts applying *Padilla*, including this Court, have held that where the immigration consequences of a plea are a "virtual certainty," defense counsel has a mandatory duty to explicitly state what those consequences will be. *See Ex parte Ramirez, 08-11-00073-CR, 2012 Tex. App. LEXIS 6343, 2012 WL 3113140, at *3-*4 (Tex.App.--El Paso Aug. 1, 2012, no pet.)*(not designated for publication); *Ex parte Carpio-Cruz, 2011 Tex. App. LEXIS 8930, 2011 WL 5460848, at *7*; *see also Martinez v. State, PD-1338-11, 2012 Tex. Crim. App. Unpub. LEXIS 505, 2012 WL 1868492, at *4 (Tex.Crim.App. May 16, 2012)*(not designated for publication), *overruling on retroactivity grounds recognized on remand sub nom Ex parte Martinez, 13-10-00390-CR, 2013 Tex. App. LEXIS 7276, 2013 WL 2949546, at *2 (Tex.App.--Corpus Christi June 13, 2013, no pet.)*(mem. op., not designated [*12] for publication); *Ex parte Tanklevskaya, 361 S.W.3d 86, 96-97 (Tex.App.--Houston [1st Dist.] 2011, pet. granted)*, *rev'd on retroactivity grounds*, *393 S.W.3d 787 (Tex.Crim.App. 2013)*(recognizing duty to explicitly state that client will be deemed inadmissible under *8 U.S.C. 1182(a)(2)(A)(i)(II)(West 2008)* for pleading guilty to "violation of . . . any law . . . relating to a controlled substance . . ." because

immigration consequences were clear and presumptively mandatory); *Ex parte Olvera, 394 S.W.3d 572, 576 (Tex.App.--Dallas 2012, pet. granted)*, rev'd on retroactivity grounds, *PD-1215-12, 2013 Tex. Crim. App. Unpub. LEXIS 335, 2013 WL 1149926 (Tex.Crim.App. Mar. 20, 2013)*(not designated for publication)(counsel has duty to inform client that pleading guilty to aggravated felony will result "in automatic deportation or exclusion from the country" under *8 U.S.C. 1227(a)(2)(A)(iii)(West 2005)*).[3] Merely stating that removal proceedings *could* ensue after a guilty plea to an aggravated felony or drug offense is ineffective in mandatory removal cases; counsel must clearly state that pleading to the offense *will* result in removal. *Ex parte Ramirez, 2012 Tex. App. LEXIS 6343, 2012 WL 3113140, at *3-*4*; *Ex parte Carpio-Cruz, 2011 Tex. App. LEXIS 8930, 2011 WL 5460848, at *7*; *Ex parte Olvera, 394 S.W.3d at 576* **[*13]** (stating that pleading to aggravated felony "could" result in removal is constitutionally ineffective); *Ex parte Romero, 351 S.W.3d 127, 131 (Tex.App.--San Antonio 2011, pet. granted)*, rev'd on retroactivity grounds, *393 S.W.3d 788 (Tex.Crim.App. 2013)*; *Salazar v. State, 361 S.W.3d 99, 103 (Tex.App.--Eastland 2011, no pet.)*(use of terms "likelihood" and "possibility" of removal when conviction would result in "certain deportation" rendered counsel's advice ineffective).

Here, trial counsel admitted on cross-examination that he told Appellant that removal was a possibility and advised him to consult an immigration lawyer. Given that a cursory check of the Immigration and Nationality Act shows that **HN5** robbery and possession of cocaine are both automatically deportable offenses under immigration law, *see 8 U.S.C.A. § 1101(a)(43)(G)(West 2005)*("theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment at least one year" is aggravated felony); *8 U.S.C.A. § 1227(a)(2)(B)(i)(West 2005)*(state law conviction "relating to a controlled substance . . . other than a single offense involve possession for one's own use of 30 grams or less of marijuana" is deportable offense), and given that**HN6** deferred adjudication has the same effect for immigration purposes as a conviction, *see Garnica-Vasquez v. Reno, 40 F.Supp.2d 398, 405-06 (W.D.Tex. 1999)*, counsel had a duty to stress that pleading guilty to those crimes and receiving deferred adjudication would absolutely result in **[*15]** Appellant's imminent removal from the United States. *Padilla, 559 U.S. at 369, 130 S.Ct. at 1483*.

At the habeas hearing, trial counsel relayed his belief that even where a defendant pleads guilty to an automatically deportable offense, removal is uncertain because ICE has not removed people he knows personally who have pleaded guilty to such offenses. But **HN7** counsel's constitutional duty to inform his client that his removal is a virtual legal certainty does not wane merely because counsel believes the probability of actual removal is uncertain based on his past experience and ICE's enforcement priorities. *Padilla, 559 U.S. at 359, 130 S.Ct. at 1478* (counsel ineffective in advising client he "did not have to worry about immigration status since he had been in the country so long"). Nor is counsel's ignorance of mandatory deportation consequences under the Immigration and Nationality Act excused by immigration law's complexity, as "we have held counsel accountable for knowledge, or the ability to attain knowledge, of relevant legal matters that are neither novel nor unsettled." *Ex parte Moody, 991 S.W.2d 856, 858 (Tex.Crim.App. 1999)*. The list of deportable offenses, although extensive,

---

[3]  Prior to the United States Supreme Court's decision in *Chaidez v. United States,    U.S.    , 133 S.Ct. 1103, 185 L.Ed.2d 149 (2013)*, Texas courts routinely applied the *Padilla* standard retroactively to convictions made final before March 31, 2010 (the date of the decision in *Padilla* was announced). However, in *Chaidez*, the majority held that *Padilla* announced a new rule of constitutional law inapplicable in habeas challenges to convictions that became final prior to March 31, 2010. *Id. at 1113*. In light of *Chaidez*, the Court of Criminal Appeals subsequently decided that *Padilla* also did not apply retroactively under the Texas Constitution. *Ex parte De Los Reyes, 392 S.W.3d 675, 679 (Tex.Crim.App. 2013)*. Although many **[*14]** of the cases cited herein were reversed on retroactivity grounds, we find their reasoning to be sound and rely on these cases as persuasive authority.

[*16] is clearly set out at _8 U.S.C.A. § 1227(a)_, and the list of 21 types of aggravated felonies triggering automatic removal is set out at _8 U.S.C.A. § 1101(a)(43)_. _Padilla_ imposes a duty on defense counsel to know what these crimes are and to advise a client that a plea to any of these crimes will make him or her presumptively deportable. _Padilla, 559 U.S. at 369, 130 S.Ct. at 1483_. Counsel's admitted failure to even consult the Immigration and Nationality Act list in advising his client is deeply troubling, particularly in light of counsel's status as a public defender practicing in an area located on the United States-Mexico border with a high immigrant population.

Trial counsel's admission that he did not explicitly state that Appellant's post-plea removal was a legal certainty, coupled with his admitted failure to research which offenses constituted aggravated felonies under the Immigration and Nationality Act, constitute ineffective assistance in an aggravated felony and narcotics case as a matter of law. The trial court abused its discretion in finding otherwise.

### Prejudice

We next address whether Appellant was prejudiced by counsel's deficient performance at the plea stage.

In _Padilla_, [*17] the Supreme Court only addressed the deficient performance prong of _Strickland_, leaving the lower courts to formulate their own approaches to the issue of prejudice. _559 U.S. at 360, 130 S.Ct. at 1478_. While the State points us to a four-factor approach to prejudice that our sister circuit in Houston has taken that assesses a defendant's probability of success at trial, _Ex parte Murillo, 389 S.W.3d 922, 928-31 (Tex.App.--Houston [14th Dist.] 2013, no pet.)_, _abrogated on retroactivity grounds by_ _Ex parte Chaidez, 133 S.Ct. at 1113_, and _Ex parte De Los Reyes, 392 S.W.3d at 679_, we have previously rejected a solely merits-based prejudice analysis, recognizing that _HN8_ "[d]eprivation of a trial" stemming from a _Padilla_ violation "is a structural defect, which amounts to a serious denial of the entire judicial proceeding itself, and it demands a presumption of prejudice." _Ex parte De Los Reyes, 350 S.W.3d 723, 730 (Tex.App.--El Paso 2011, pet. granted)_, _rev'd on retroactivity grounds_, _392 S.W.3d 675 (Tex.Crim.App. 2013)_. "The focus of the prejudice inquiry . . . is whether the defendant was deprived of a particular proceeding by counsel's deficient performance, not whether the outcome of that [*18] proceeding would have been favorable to the defendant." _Id. at 731_. "Therefore, the defendant must demonstrate that but for counsel's performance, he would have availed himself of the proceeding in question." _Id_. In assessing prejudice, "we are to consider the circumstances surrounding [the] guilty plea and the gravity of the advice that [the defendant] did not receive as it pertained to [the defendant's] plea determination." _Ex parte Tanklevskaya, 361 S.W.3d at 97_.

Appellant met his burden in establishing prejudice. Appellant stated in his affidavit that he accepted the plea deal because trial counsel advised him that he would not have to go to jail and that the deferred adjudication meant the charges would eventually be dismissed. The fact that trial counsel would explain those circumstances but did not inform him that the plea would subject Appellant to mandatory removal weighs heavily in our analysis, particularly considering that prejudice is presumed. _Id_. Appellant was also an LPR, a native English speaker, and has resided in the United States since he was a small child, all of which weigh in favor of a prejudice finding. _See Ex parte Ramirez, 2012 Tex. App. LEXIS 6343, 2012 WL 3113140, at *4_ (taking residence [*19] in the United States since early childhood and ties to home country as prejudice factors). Finally, Appellant sufficiently alleged that he would have taken alternate courses of action in his habeas corpus petition, as required to establish

prejudice. *See* [Hill v. Lockhart, 474 U.S. 52, 60, 106 S.Ct. 366, 371, 88 L.Ed.2d 203 (1985)](habeas petition must contain allegations that applicant would have pursued other options to satisfy prejudice prong of *Strickland*). Specifically, Appellant contended before the trial court and this Court that as an LPR, he would have been eligible for immigration relief and citizenship through cancellation of removal[4] on May 24, 2013, when he would have resided lawfully in the United States for seven years. Appellant maintains that his plea deal directly led to him being placed in removal proceedings before he was timely eligible for cancellation of removal, and that the offenses he pled to now preclude any discretionary immigration relief at all. Had he received proper counsel, Appellant claims he would have delayed the plea until he was statutorily eligible for cancellation of removal and sought an immigration-neutral plea agreement, or alternatively, gone [*20] to trial, moved to suppress the narcotics, and fully litigated that issue.

In viewing the totality of the circumstances, we find that Appellant has met his burden in establishing prejudice. *[Ex parte De Los Reyes, 350 S.W.3d at 730](link)*. Such prejudice could not be cured by the one paragraph admonishment in the plea papers stating that the plea "may" result in his removal. *[Id. at 731](link)*; *[Ex parte Tanklevskaya, 361 S.W.3d at 99](link)*.

Appellant's sole issue is sustained. We reverse the trial court's order denying writ of habeas corpus and render judgment [*21] granting the writ of habeas corpus.

March 21, 2014

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)

---

[4] Cancellation of removal is an affirmative defense in removal proceedings that a lawful permanent resident may assert to defeat removal, provided he:

> 1) has been an alien lawfully admitted for permanent residence for not less than 5 years,

> 2) has resided in the United States continuously for 7 years after having been admitted in any status, and

> 3) has not been convicted of any aggravated felony.

[8 U.S.C.A. § 1229b (West 2008)](link). The continuous residency clock terminates upon ICE's service of an immigration indictment known as a Notice to Appear, or when the alien has committed an offense rendering him deportable, whichever occurs first. [8 U.S.C.A. § 1229b(d)(1)](link).